UNITED STATES, Appellee,

v.

Aaron A. DUPAS, Specialist Five, U. S.
Army, Appellant.

No. 43197/AR.

CM 440507.

U. S. Court of Military Appeals.

Aug. 30, 1982.

For Appellee: *Captain Paul K. Cascio* (argued); *Colonel R. R. Boller, Major John T. Edwards* (on brief).

For Appellant: *Captain Judson W. Roberts* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Captain Joseph A. Russelburg* (on brief); *Steven E. Berkowitz*, Legal Intern.

Amicus Curiae for Appellant: *Colonel Robert B. Clarke, Lieutenant Colonel H. Jere Armstrong, Major Peter E. Brownback, III, Major John R. Howell, Captain H. Franklin Young, III*—on behalf of U.S. Army Trial Defense Service (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

After a general court-martial had convicted him of rape, appellant claimed that he had received ineffective assistance of counsel at trial—especially by reason of counsel's failure to call a possible alibi witness. In connection with this claim, appellate defense counsel requested access to the file of Captain Ogilvie, the trial defense counsel. Upon failure to receive access, he submitted to Ogilvie certain specific questions concerning Ogilvie's preparation for trial and the reasons for certain tactical choices made at trial. At the same time, he informed Ogilvie that, unless answers were provided to the Court of Military Review where the case then was pending, he would request that court to order the questions answered.

When no answers were forthcoming, appellate defense counsel proceeded to make the promised motion and a hearing thereon was held in chambers by the Court of Military Review. At that time, appellate government counsel advised the court that he had discussed the pending questions with the trial defense counsel, who was not planning to answer them. However, appellate government counsel added that Captain Ogilvie would soon provide a detailed affidavit which should adequately deal with the issues raised by appellant.

The motion was taken under advisement by the Court of Military Review and an affidavit was forthcoming from trial defense counsel. Subsequently, the Court of Military Review denied appellant's motion to compel Captain Ogilvie to answer the questions that had been submitted to him by appellate defense counsel and proceeded to affirm the conviction.

Appellant petitioned this Court for review. In connection with the petition, he submitted a motion to compel appellate government counsel to answer interrogatories as to whether he had advised Ogilvie

not to respond to the questions submitted previously by appellate defense counsel. On the basis of the briefs submitted concerning the petition for review and this motion—including an amicus brief from the Army Trial Defense Service—and the oral argument, we conclude that appellant is entitled to certain relief as discussed hereinafter.

## I

■ We start with the premise that the lawyer who represents an accused at trial has certain continuing post-trial responsibilities. *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977); *see United States v. Schreck*, 10 M.J. 226, 228 (C.M.A.1981). For the most part, those duties have been performed by the time a case has reached the Court of Military Review and appellate defense counsel have been assigned. However, even then, trial defense counsel must provide reasonable assistance to the appellate defense counsel, if requested. *See* para. D–2d, AR 27–10 (C12, 12 December 1973). For example, he may be obligated to obtain information or affidavits needed by the client in connection with the appellate review. Of course, trial defense counsel

cannot take any action after trial which might harm his client.

■ Frequently, a convicted defendant becomes disenchanted with the lawyer who represented him at trial and so he claims that he has been inadequately represented. When this occurs, the attorney-client privilege is waived, *United States v. Allen*, 8 U.S.C.M.A. 504, 508, 25 C.M.R. 8, 12 (1957),[1] but only as to matters reasonably related to that claim.[2] *See United States v. Zuis*, 49 C.M.R. 150, 158 (A.C.M.R.1974); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967); DR 4–101(C)(4), ABA Model Code of Professional Responsibility (1980). The attorney is not free to volunteer information that does not concern the issue of ineffective assistance of counsel.[3]

■ In connection with any claim of ineffective assistance of counsel, an appellant may wish to examine the file of the lawyer who represented him at trial in order to determine what steps were taken in his behalf. Sometimes, an attorney may not want to grant his client access to the file, even when it contains the client's own papers.[4] This "work-product privilege,"[5]

1. The court in *Laughner v. United States*, 373 F.2d 326, 327 n.1 (5th Cir. 1967), observed:
    The rule that a client waives his privilege by attacking the attorney's performance of his duties seems to have been adopted unanimously by those courts which have dealt with the question. E.g., *Farnsworth v. Sanford*, 115 F.2d 375 (5 Cir. 1940) (dictum), cert. denied, 313 U.S. 586, 61 S.Ct. 1109, 85 L.Ed. 1541 (1941); *United States v. Wiggins*, 184 F.Supp. 673, 677–78 (D.C.D.C.1960), and cases cited therein; *United States v. Monti*, 100 F.Supp. 209 (D.C.N.Y.1951). It also enjoys impressive scholarly support [see 8 Wigmore, Evidence, § 2327(6) (McNaughton rev. 1961)], has been adopted in the Uniform Rules of Evidence [Rule 26(2)(c) ], and is approved by the American Bar Association's Canons of Professional Ethics [Canon 37]. *See also* Rule 503(d)(3) of the Supreme Court draft of proposed Federal Rules of Evidence (not enacted) (1973).

2. For other instances in which a client by his own affirmative action waives the attorney-client privilege to the extent necessary to resolve his claim, *see United States v. Miller*, 600 F.2d 498 (5th Cir. 1979), cert. denied, 444 U.S. 955, 100 S.Ct. 434, 62 L.Ed.2d 327 (1979);

*Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975); *Pruitt v. Peyton*, 243 F.Supp. 907 (E.D.Va. 1965).

3. At earliest common law, the attorney-client privilege was solely the attorney's. However, since the 18th century, it has rested entirely with the client. *Radiant Burners, Inc., v. American Gas Association*, 207 F.Supp. 771, 773 (N.D.Ill.1962), adhered to, 209 F.Supp. 321 (N.D.Ill.1962), reversed, 320 F.2d 314 (7th Cir. 1963), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). Accordingly, except to the extent that the client impliedly waives the privilege by his attack, it remains in effect.

4. This is especially likely when the attorney is owed a fee for legal services already rendered. However, even then, the client is usually considered to be entitled to his own papers, at least absent some specific statutory authority for retaining a possessory lien on those papers. *But see People v. Altvater*, 78 Misc.2d 24, 355 N.Y.S.2d 736 (Sup.Ct., 1936), where the court held that a lien on such papers for fee payment could not exist in a criminal case because it would deny successor counsel the materials necessary to prepare the case and, thereby,

discussed in the leading case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), was cited to us as a justification for refusal by trial defense counsel to allow appellant or his appellate representative access to the files or information about acts performed in defending the case. However, the "work-product privilege" applies only against third persons and cannot be invoked against the client himself—or against his agent. *See id.* Indeed, the Code of Professional Responsibility requires that an attorney keep his client informed concerning his representation. *See* EC 9–2, ABA Model Code of Professional Responsibility (1980). Accordingly, we see no basis for denying appellant—or, in this instance, appellate defense counsel as his representative—reasonable access to Captain Ogilvie's file in this case and reasonable opportunity to reproduce documents in that file.

■ We perceive only two possible limitations in this regard: (a) If for some reason, cost to the attorney is involved in reproducing documents or providing access, the client must provide for reimbursement of those costs; and (b), if information has

been provided to a lawyer on the promise that it will be kept in confidence—even with respect to his client—the confidentiality of that information must be maintained.[6] Of course, neither of these limitations has any relevance to the present case.

■ Admittedly, appellate government counsel discussed with trial defense counsel the questions that had been submitted by appellate defense counsel. We recognize that, when an appellant claims that he has been inadequately represented at trial, the Government must have access to information concerning the merits of that claim. Frequently, only the trial defense counsel can provide that information and, since by his attack on his lawyer's competency a client waives his attorney-client privilege as to matters directly related to that attack, a prosecutor is free to discuss with the trial defense counsel the steps he took in his defense of the appellant. Likewise, he can obtain an affidavit from the counsel to refute the allegations of inadequate representation. However, obtaining information is one thing and providing legal advice is quite another.[7] In the case at bar, appellate government counsel apparently did not

deny the accused due process of law. Of course, any attorney is entitled to retain copies of documents for his client's file to the extent that this is necessary so that the lawyer may protect himself against a subsequent claim of malpractice or to the extent the documents reflect the legal research and insights of the attorney and his staff.

5.  As distinguished from the related attorney-client privilege, *see* n.3, *supra*, the work-product privilege historically and traditionally is that of the attorney, not the client. *But see* E. Imwinkelried, P. Grannelli, F. Gilligan, F. Lederer, *Criminal Evidence* 201 (1979). It *"prevents access to matters considered part of a lawyer's work-up of a case for (or already in) litigation."* Rothstein, *Evidence in a Nutshell: State and Federal Rules* 453 (1981). If "such materials" as a lawyer's assembly of relevant facts and his legal theories and strategy in the case were "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See McCormick's Handbook of the Law of Evidence* § 96 p. 201 (2d ed. 1972). The privilege is a "qualified" one "giving way for 'good cause,' a sliding concept that requires more, the closer to the heart of a

lawyer's creative contribution the material sought comes." Rothstein, *supra* at 453.

6.  Fed.R.Crim.P. 32(c)(3)(A) recognizes that information in a presentence report may be obtained on a promise of confidentiality. In his investigation of a case, an attorney sometimes may obtain information on a similar promise.

7.  Admittedly, a defense counsel whose competency has been attacked by his client may need legal advice; at that point he hardly can secure it from the appellate defense counsel who is attacking him. However, there are alternatives other than turning to a representative of the prosecution—whether the original trial counsel or an appellate government counsel—for advice on how to proceed. Just because the interests of the Government and of the trial defense counsel have converged to a degree in the wish to have the latter's trial representation ruled adequate does not suffice to create an attorney-client relationship between government counsel and trial defense counsel. As we have indicated, except to the extent necessary to defend against appellant's attack, trial defense counsel's loyalty must remain with appellant. If the trial defense counsel believes in some way his own interests are jeopardized, he

appreciate the distinction. By his own acknowledgment, appellate government counsel seems almost to have assumed the role of legal advisor to trial defense counsel in these discussions. By doing so, he has placed the Government in the position of interfering with the relationship between appellant and his original attorney. Moreover, a prosecutor cannot advise any witness not to talk with a defense counsel,[8] and the same principle applies here with respect to advising a witness—even trial defense counsel—not to provide information to the appellate defense counsel.

In connection with efforts of an accused to secure evidence by subpoena, deposition, or interrogatories, the Government sometimes will find occasion to object. Possible delay in concluding a trial or expense in producing the witness for a trial or deposition may prompt the objection. However, when an appellate defense counsel seeks to obtain information from the trial defense counsel, as in the case at bar, the Government seldom will have a valid reason for arguing that the information should not be provided.[9]

■■■ In connection with the questions submitted to him by appellate defense counsel, Captain Ogilvie was entitled to supplement his answers with any suitable explanation. Moreover, if he had covered the same area in his affidavit, he could use the document as an attachment to his answers in order to explain them. However, in our opinion, Captain Ogilvie's affidavit does not fully cover several of the areas into which appellate defense counsel was probing.[10] Some of these omissions were specifically brought to the attention of the court below by appellant's motion for reconsideration.

## II

Accordingly, the decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court with instructions to direct trial defense counsel to answer the questions of appellate defense counsel and to allow him access to appellant's case file. After this discovery has been completed, the Court of Military Review shall conduct such further proceedings as may be appropriate, including deciding what further action, if any, should be taken on appellant's claim of ineffective assistance of counsel. Thereafter, if he chooses, appellant may petition for further review by our Court under Article 67(b)(3), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(3). We hereby enjoin appellate government counsel from taking any action that might in any way be construed as interference with Captain Ogilvie's providing information or which might in any way impede appellant in obtaining information from Captain Ogilvie.

Judge FLETCHER concurs.

COOK, Judge (concurring):

I have extensively researched the legal questions raised in this motion and cannot find any Federal case directly on point; therefore, I believe we are establishing a new rule of law. While I concur with the majority in the present factual situation, I am fearful of the ultimate consequences of our action if this new rule is too broadly interpreted. I write separately to express these concerns.

---

can appropriately ask that the matter be adjudicated by the court.

**8.** *See United States v. Killebrew*, 9 M.J. 154 (C.M.A.1980); *United States v. Enloe*, 15 U.S.C. M.A. 256, 35 C.M.R. 228 (1965); *United States v. Aycock*, 15 U.S.C.M.A. 158, 35 C.M.R. 130 (1964); *United States v. Wysong*, 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958).

**9.** If obtaining the information would cause a great delay in completing appellate review, an objection might be justifiable. However, that problem was not present here.

**10.** For example, while he explained his reasons for not calling an alleged alibi witness to testify at trial, Ogilvie never answered specifically whether he had interviewed that witness. Indeed, on the basis of disclosures during oral argument, it appears that he did not interview the witness. However excusable that failure may be, *see e.g., United States v. Jefferson*, 13 M.J. 1 (C.M.A.1982), appellant is entitled to accurate, specific information about what his trial defense counsel did or failed to do.

I agree that appellate defense counsel is entitled to access to trial defense counsel's files and that such access should be free from interference by appellate government counsel. The interaction of personalities in this case has resulted in a scrambling of relationships which requires our remedial action. However, our action is limited in its application to the peculiar situation before us, and should not, itself, contribute to further obscuring the proper relationships between counsel and client, and counsel and counsel.

A schism has developed between appellate defense counsel and trial defense counsel, and the potential mischief which I foresee is that it may be widened. The fact that communications between the two defense counsel has now reached a state where court-directed interrogatories and court-ordered disclosures are necessary indicates a disruption of customary attorney-client relations. What concerns me is that, because of this disruption, trial defense counsel may become intent on justifying his own conduct; appellate government counsel may become intent on supporting him; and appellate defense counsel may become intent on attacking him. This has already occurred, and the result is that the *overall* interests of the client, heretofore paramount, may be overlooked. Obviously, such a situation should be avoided, but it can arise at some point in proceedings such as this. I think we must try to determine, as nearly as possible, the point at which the trial defense counsel may abrogate the attorney-client privilege in order to defend his own professional competence.

At the outset and for his own protection, appellate defense counsel should obtain some specific authorization from the accused identifying the particular areas in which the accused feels his trial representation was lacking in professional quality. Having this, the appellate defense counsel must be able to communicate with trial defense counsel in ascertaining the truth and extent of such deficiencies. Trial defense counsel should explain his judgments and thought processes to appellate defense counsel, even recognizing that, at least potentially, his own conduct is being scrutinized. After such consideration, when appellate defense counsel determines that, in his professional judgment, a legitimate basis exists for attacking the adequacy of trial representation and files pleadings and briefs, the primary obligation of trial defense counsel to the accused ceases, and he is then free to take steps to justify his own conduct. In doing so, he may, to the limited extent necessary, breach the existing attorney-client privilege. This state of affairs should be communicated to the client for the ramifications of future actions must be understood.

I presume that appellate defense counsel will not make such a decision lightly or without giving due consideration to the effect it may have on the accused. A broad-based attack on trial defense counsel may well authorize him to respond as broadly which may disclose information far more harmful to the accused than the results he may anticipate by challenging the adequacy of his defense. The perceived threat to trial defense counsel must not be allowed to become a real threat to the accused.

I have no serious doubts that the average competent military defense counsel will ultimately be able to justify his tactical trial decisions. After all, the test is not whether, when viewed in the clear light of hindsight, he was correct in every instance, but instead whether, upon consideration of the record as a whole, the accused received competent professional representation.

If, as prophesied by the *amicus* briefs, our opinion results in trial defense counsel either not preparing work files or preparing exhaustive files with a view to later disclosure, such a result will be less harmful to the defense counsel than to the accused since the threat of ultimate disclosure, even in limited conditions, may well erode the basic purpose of the attorney-client privilege and may curtail the full disclosure it was designed to encourage.

In sum, the obligations of both echelons of defense counsel are identical and lie in the same direction: protection of the client. The ultimate vindication of trial decisions must play a secondary role.