**UNITED STATES**

v.

**Airman First Class Timothy A. CAUDILL, FR 266–29–5292.**

**ACM S26208.**

U.S. Air Force Court of Military Review.

24 April 1984.

ORDER and OPINION

KASTL, Senior Judge:

In the sole assignment of error, the accused argues in effect that he was denied effective post-trial assistance.

I

Dates are significant to an understanding of this matter. At Torrejon Air Base, Spain, the accused was convicted, despite his pleas, of using marijuana and cocaine, violations of Article 134, U.C.M.J., 10 U.S.C. § 934. After earlier sessions held in March and June, trial was completed on 4 August 1983.

The accused was defended at trial by Mr. Rafael L. Franco, a civilian attorney practicing in Spain, and Captain Carlos E. Rodriguez, an area defense counsel. On 19 October 1983, The Judge Advocate General of the Air Force suspended Mr. Franco from practice before Air Force tribunals for one year. The record reflects that Mr. Franco planned to perform post-trial duties in the accused's case; because of the suspension, Mr. Franco was not allowed to do so. Since the accused was represented by a competent military attorney—Captain Rodriguez—the Government consigned post-trial duties into his hands.

The special court-martial authority approved the sentence on 28 October 1983; the accused receipted for the record on 18 November and the general court-martial convenor approved the sentence on 22 November.

Captain Rodriguez now has separated from the Air Force.

II

We now turn to several specific subject areas: the clemency interview; the *Goode* response; and the overall matter of con-

flicting affidavits as to ineffective representation.

### Clemency Interview

The record reflects that the accused personally requested a formal clemency interview on or about 4 August 1983. According to allied papers accompanying the record of trial, Captain Chisolm was detailed to conduct that interview. Captain Chisolm's report relates that he contacted Mr. Franco on 5 August. Mr. Franco questioned the need for an immediate interview and essentially recommended waiting for completion of the transcript before holding the interview. Under guidance then in force, an interview must have been conducted within 24 hours of sentence (A.F.M. 111–1, Military Justice Guide, para. 7–4f (2 July 1973)).

Later the same day, Captain Rodriguez advised Captain Chisolm that Mr. Franco would be available at 1400 hours; at 1430 hours, Captain Chisolm learned that Mr. Franco was not coming. Captain Chisolm then spoke with Captain Rodriguez, who "expressed his apologies but then stated that Mr. Franco had contacted him earlier and had 'decided to waive the post-trial clemency interview'." Captain Chisolm's report concluded that the interview was effectively waived. All these events occurred prior to Mr. Franco's 19 October 1983 suspension from Air Force practice.

### Goode Response

In the Staff Judge Advocate's Review dated 2 November 1983, the general court-martial convenor was advised that Mr. Franco had been suspended and that the accused still was represented by competent counsel, Captain Rodriguez. According to documents included in that review, the following occurred:

1. A copy of the review was provided to Captain Rodriguez on 2 November 1983; Captain Rodriguez's indorsement indicates his intent to submit matters on the accused's behalf.

2. By a second indorsement, Captain Rodriguez requested a delay until 22 No-

vember to submit matters; that request was approved until 1200 hours, 21 November.

3. A memo for the record dated 21 November 1983, signed by a paralegal in the Office of The Staff Judge Advocate, relates that Captain Rodriguez indicated by telephone that: (a) he would not submit matters in accordance with *United States v. Goode*, 1 M.J. 3 (C.M.A.1975); and (b) his telephone conversation was an affirmative waiver.

4. In a follow-on response to the Staff Judge Advocate's Review, dated 21 November, Captain Rodriguez stated as follows:

21 November 1983

REPLY TO
ATTN OF: ADC
SUBJECT: Response to SJA Review, U.S. v. Caudill
   TO:  16 AF/JA
          16 AF/CC
          IN TURN

1. After review of subject document, *we have decided not to submit matters.*

2. Our position is that Mr. Franco is the counsel of choice of the accused to represent him in this nonjudicial aspect of his case. *Our office will respect the accused's wish to be represented by the counsel of his choice.*

3. Mr. Franco has in his possession all case files, research notes, and documents required for preparation of subject document. (emphasis added).

CARLOS E. RODRIGUEZ, Capt, USAF
Area Defense Counsel

### Affidavits of the Accused and Captain Rodriguez

On 24 January 1984, appellate defense counsel presented an affidavit from the accused. The Motion to File Document is GRANTED. In this affidavit, the accused relates that:

On 4 August 1983, before a Special Court-Martial convened at Torrejon Air Base, Spain, I was tried for alleged violation of the Uniform Code of Military

Justice, Article 134. I was found guilty of the charge and guilty of two of the three specifications. The sentence adjudged was that I be discharged from the service with a bad conduct discharge, be confined at hard labor for three months and be reduced to the grade of E–1. During the court-martial proceedings, I was represented by Captain Carlos E. Rodriguez, HQ USAF Judiciary, APO New York 09283, and by retained civilian defense counsel, Mr. Rafael L. Franco of Madrid, Spain.

*At no time before or after the court-martial did I discuss with either of my defense counsels matters relating to the clemency interview or my right to waive the interview.*

On 19 August 1983, TSgt Bobby Brown of the 401 TFW/JA presented me with an AF Form 304 which I understood to be a request for appellate counsel. I signed this form on 19 August 1983 and returned it to TSgt Brown without the benefit of advice from either of my defense counsels concerning my appellate rights.

*On 5 August 1983, during my second day of confinement, I saw Captain Rodriguez and did not consult with him again until 19 December 1983. I have not seen nor spoken to Dr. Franco since 4 August 1983* (emphasis added).

On 17 February 1984, appellate government counsel made a Motion for Extension of Time to secure an affidavit from Captain Rodriguez; that Motion was GRANTED by the Court on 17 February.

On 21 March 1984, appellate government counsel filed a Motion for Leave to File Supplemental Document; that motion is GRANTED. The 21 March Motion reports that Captain Rodriguez "did not respond to queries nor provide an affidavit as originally promised" and—since the Government could not acquire an affidavit from Captain Rodriguez—none was filed.

■ Subsequently, Carlos E. Rodriguez filed an affidavit, dated 28 March 1984.* The Government's 4 April 1984 Motion for Leave to File Documents (the Rodriguez affidavit and two supporting documents) is GRANTED. That affidavit states, in part:

That I was Detailed Defense Counsel in U.S. v. Caudill. *That after the sentence was pronounced* and pursuant to Mr. Franco's (civilian counsel) request, *I advised Amn Caudill on post-trial matters. Such advice included in detail, the post-trial clemency process and Goode Response.*

That regarding the Goode Response the accused advised me that he wanted Mr. Franco, and only Mr. Franco to prepare it, for "that is what he has been paid for."

That regarding the post-trial clemency hearing, I did not advise him to waive it, (I do not know if Mr. Franco advised him to waive it, for he was of the opinion that it was a waste of time) actually, my attitude was to participate in the process fully ... to the extent lead counsel would allow. I do not recall the accused specifically advising me that he desired to waive the hearing.

That upon receipt of the voluminous Record of Trial and SJA Review, an extension to reply was requested automatically. Due to the volume of the record and the fact that I was preparing two Special Courts-Martial scheduled within and right after the five days.

---

* When an accused claims inadequate representation, the attorney-client privilege is waived as to matters reasonably related to that claim. This precept is undisputed in both military and civilian law. *United States v. Dupas,* 14 M.J. 28, 30 (C.M.A.1982); *United States v. Allen,* 8 U.S.C. M.A. 504, 25 C.M.R. 8, 12 (1957); *United States v. Harris,* 24 C.M.R. 698, 709 (A.F.B.R.1957); *United States v. Reynolds,* 19 C.M.R. 850, 853–854 (A.F.B.R.1955); *United States v. Zuis,* 49 C.M.R. 150, 158 (A.C.M.R.1974); *United States v.*

· *Pratt,* 9 M.J. 548, 550 (N.C.M.R.1980). *See also United States v. Rasheed,* 663 F.2d 843, 844 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315; *Laughner v. United States,* 373 F.2d 326, 327 (5th Cir.1967) (citing numerous authorities); VIII Wigmore on Evidence (McNaughton Rev.) § 2327 (1961) (citing cases since 1894); D.R. 4–101(C)(4), ABA Model Code of Professional Responsibility (1980). *See generally* paras. 42 and 48k, M.C.M. 1969 (Rev).

That after numerous unsuccessful attempts to contact Mr. Franco, and being under the impression that Amn Caudill had been transferred to Fort Leavenworth, our 21 November 1983 letter to 16 AF/JA was prepared....

That the day after the letter was delivered, I saw Amn Caudill and asked him to come to my office, which he did.

Then I explained to Amn Caudill the contents of my letter to 16 AF/CC, and he agreed fully with my actions, and advised me he would contact Mr. Franco "for the appeal." (emphasis added).

### III

 There are numerous unanswered questions in regard to these affidavits and scenario. We think two facts are salient, however. First, nothing of record appears that *the accused* ever specifically waived the clemency interview he requested in writing on 4 August. See generally A.F.M. 111-1, paras. 7-4f and k (2 July 1973). Second, we are concerned that the accused's two attorneys may have operated in Alphonse-Gaston fashion, each assuming that the other was in charge of the clemency interview and *Goode* response, with the accused somehow becoming lost in the process.

We stand, metaphorically, at a fork in the road. On the one hand, we might require further affidavits to plummet to the bottom of things in regard to the clemency interview and *Goode* response. On the other hand, we might simply—in the overall interests of justice and the precept of judicial economy—require a new clemency interview, review, and action. Upon some reflection, we believe the latter to be the wiser path. This choice is buttressed by our concern as to *Goode* that the accused experienced the rare situation where lead counsel was suspended (thus barred from proceeding further) and military defense counsel nonetheless deferred to that lead counsel to continue handling post-trial duties.

Accordingly, on the limited and unique fact pattern before us—and without ultimately determining whether the accused was denied effective post-trial assistance of counsel—we set aside the action of the convening authority. We return the case to The Judge Advocate General for a new clemency interview, *Goode* response and action by the same or a different convening authority. The case will then be returned to this Court for further review.

CANELLOS and RAICHLE, Judges, concur.