UNITED STATES, Appellee

v.

Michael R. LORENZEN, Staff Sergeant
U.S. Air Force, Appellant.

No. 96–1036.
Crim.App. No. 31292.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 6, 1997.

Decided Sept. 3, 1997.

Certiorari Denied Dec. 15, 1997.
See 118 S.Ct. 630.

For Appellant: *William J. Holmes* (argued); *Captain Michael L. McIntyre* (on brief).

For Appellee: *Lieutenant Colonel Michael J. Breslin* (argued); *Colonel Theodore J. Fink* (on brief); *Major LeEllen Coacher*.

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was charged at a general court-martial with six specifications of larceny of the following military property:

1. Two General Electric base-station radios.

2. A master key to Building 500.

3. Four extreme cold weather sleeping bags.

4. Two MCU/2P gas masks.

5. Two General Electric camcorders, two Solidex tripods, and two General Electric AC adapters belonging to the University of Montana.

6. An Acer central processing unit, monitor, and keyboard. (Specifications 5 and 6 were combined.)

By exceptions and substitutions, he was convicted of all the larceny offenses, in violation of Article 121, Uniform Code of Military

Justice, 10 USC § 921, except stealing the master key to Building 500, the Acer central processing unit, and one Solidex tripod. He was also convicted of four specifications of writing bad checks, in violation of Article 123a, UCMJ, 10 USC § 923a. On April 7, 1994, appellant received a bad-conduct discharge, confinement and forfeiture of $330 pay per month for 5 years, and reduction to pay grade E–1. The Court of Criminal Appeals affirmed the findings and the sentence in an unpublished opinion.

We granted review of the following issues:

# I

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THAT TRIAL DEFENSE COUNSEL DID NOT ACT AS A DILIGENT AND CONSCIENTIOUS ADVOCATE ON BEHALF OF APPELLANT BY FAILING TO ACTIVELY AND EFFECTIVELY CHALLENGE AND CONTEST THE PROSECUTION'S CASE AND EVIDENCE, HIS FAILURE TO MAKE NECESSARY AND REQUIRED STATEMENTS, MOTIONS, AND OBJECTIONS, AND HIS FAILURE TO CROSS–EXAMINE WITNESSES AND TO PRESENT ANY DEFENSE WHEN RELEVANT AND MATERIAL EVIDENCE WAS READILY AVAILABLE.

# II

WHETHER THE SENTENCE CANNOT BE AFFIRMED BY THIS HONORABLE COURT BECAUSE IT WAS SUBSTANTIALLY AFFECTED BY UNLAWFUL COMMAND INFLUENCE WHICH DEPRIVED APPELLANT OF VITAL AND FAVORABLE EVIDENCE FROM WITNESSES WHO HAD BEEN BLATANTLY ORDERED NOT TO MAKE STATEMENTS ON BEHALF OF APPELLANT.

# III

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS COMMITTED PREJUDICIAL ERROR BY ADMITTING AND EXPRESSLY USING AN AFFIDAVIT SUBMITTED BY TRIAL DEFENSE COUNSEL WHICH WAS INADMISSIBLE BECAUSE IT DISCLOSED PRIVILEGED AND CONFIDENTIAL COMMUNICATIONS AND CONSTITUTED AN ILLEGAL AND UNETHICAL BREACH OF DEFENSE COUNSEL'S CONTINUING LOYALTY TO HIS CLIENT.

We hold that the presumption of competence of trial defense counsel has not been overcome and that the Government rebutted the presumption of prejudice arising from any unlawful command influence in the proceedings under Article 15, UCMJ, 10 USC § 815. For the reasons set forth below, we conclude that the granted issues are without merit.

## FACTS

Appellant's downfall began when he saw an acquaintance, Mr. Jody T. Cross, a retired servicemember, at a junkyard. Appellant and Cross discussed electronic equipment, and appellant informed Cross that he had some General Electric base-station type radios which Cross might be interested in purchasing from him. Appellant indicated that he purchased the base-station radios from salvage. Appellant later took those base-station radios to Cross' home, and the two discussed Cross' either buying them or finding someone to buy them.

Unfortunately for appellant, Cross closely examined the base-station radios that evening and, because they had not been demilitarized, suspected appellant was trying to sell stolen government property. The next day, he contacted the Air Force Office of Special Investigations (OSI) about his suspicions. Cross agreed to become a government informant and continue his dealings with appellant. While wearing a tape recording device, Cross had three extensive conversations with appellant about the base-station radios and sleeping bags.

The first recorded conversation involved Cross' speaking with appellant on the telephone. The two set up a time to meet and purchase sleeping bags and discussed selling the base-station radios for "four bills" or

$4,000. During that conversation, Cross complained that he believed he sprained his back lifting the base-station radios. Appellant responded, "Because you are a wimp I guess. I loaded them and unloaded them twice." Appellant also bragged that he had "brand new" sleeping bags to sell.

In the second tape-recorded conversation, Cross visited appellant at his home. At that time, Cross procured two military sleeping bags from appellant in a trade. The sleeping bags were "brand new and in their original wrappers." Cross knew that they were military-type sleeping bags because they were green and had federal stock numbers attached to them. At that meeting, appellant also discussed Cross' commission for selling the base-station radios and the missing doors to one of the radios.

During the final tape-recorded conversation, OSI agents also videotaped the transaction. Appellant and Cross met at a designated place so that Cross could pay appellant the $4,000 minus Cross' $500 commission. After Cross handed the money to appellant, OSI agents apprehended appellant.

After his arrest, appellant consented to a search of his residence. OSI agents seized a key to Building 500, a checkbook, four sleeping bags, two MCU/2P gas masks, an Acer central processing unit, a monitor, keyboard, and some video equipment. The video equipment had the words "University of Montana" etched onto it. OSI identified the video equipment as property missing from the University of Montana's Education Center, which was located at Malmstrom Air Force Base. The equipment had disappeared from the Education Center in 1991.

At trial, OSI Special Agent (SA) Shearer testified that he obtained a copy of the investigation of the missing video equipment and learned that appellant had informed agents he was alone in the building during the time frame in which the equipment had disappeared. SA Shearer also testified that the report pointed out that appellant had access to the room where the equipment had been.

At trial, the Chief of the Defense Reutilization and Marketing Office (DRMO) testified that the office's records did not indicate ap-

pellant had bought any General Electric Master II base-station radios from DRMO. He also testified that DRMO had never sold new military-issue sleeping bags or MCU/2 gas masks. There was further testimony that the type of gas masks and sleeping bags found at appellant's residence would only be given to DRMO if they were "totally unserviceable." There was also testimony that appellant had never been issued a gas mask or sleeping bag.

As for the bad-check charges, in July of 1993 appellant had closed the account on which the bad checks were written. The bad checks were written in December of 1993. Major Torchia, a member on the panel, submitted a question asking whether appellant had another checking account when the bad checks were written and how much money was in that account. The Members Services Supervisor, Lois K. Tinney, testified that appellant did have another account, but she did not know how much money was in that account. She also testified that the bank would not have automatically taken the money from the other account. The bank sent appellant three notices regarding his bad checks. Appellant paid the checks the day after he was read the charges against him (February 17, 1994), approximately a month and a half after he wrote the checks.

During sentencing, the prosecution introduced two counseling letters, two letters of reprimand, an Article 15, and efficiency reports which were not spectacular.

## DISCUSSION

### Issue I—Ineffective Assistance of Counsel

Appellant alleges that he was prejudiced by the ineffectiveness of his trial defense counsel, Captain (Capt) D. Appellant's grievances against his trial defense counsel are numerous. We address appellant's more substantive ineffectiveness claims, namely, that trial defense counsel made no opening statement, failed to make necessary motions and objections, and did not present crucial defense evidence.

As we stated in *United States v. Christy*, 46 MJ 47, 49 (1997): "The Sixth Amendment

guarantees a criminal defendant 'Assistance of Counsel for his defence.'" This Court has unanimously applied the test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See United States v. Ingham*, 42 MJ 218, 223 (1995).

*Strickland* uses a two-pronged test to determine whether appellant had ineffective assistance of counsel. The first prong is whether counsel's conduct was "below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. There is a strong presumption that counsel has provided "adequate assistance." *Id.* at 690, 104 S.Ct. at 2065. The second prong is whether there was prejudice to the defendant. *Id.* at 692, 104 S.Ct. at 2067. A defendant who alleges prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064.

To prove that a trial defense counsel's performance was "below an objective standard of reasonableness," appellant must prove that "the 'acts or omissions' on counsel's part 'were outside the wide range of professionally competent assistance.'" *Ingham*, 42 MJ at 223, quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065. In other words, this Court must be convinced that "counsel's performance was one of 'serious incompetency.'" 42 MJ at 224, quoting *United States v. DiCupe*, 21 MJ 440, 442 (CMA 1986). "The test of counsel's performance is not that he lost; and it is not that some number of options were not pursued or could have been pursued differently—without regard to the degree of utility or the potential hazard of each." 42 MJ at 229.

"Opening statements are a 'critical part of the trial.... It is during the opening statement that the parties set forth their theory and theme of the case.'" *Christy*, 46 MJ at 50, quoting *United States v. Turner*, 39 MJ 259, 265 (CMA 1994) (Crawford, J., concurring in the result). However, "unexpected events at trial may lead to changed circumstances or different trial tactics." 46 MJ at 50.

■ In a sworn affidavit, Capt D explained that he reserved his opening statement for the beginning of the defense case. Just prior to that time, however, appellant unexpectedly informed Capt D that he had decided not to testify. Capt D waived his opening statement because he "would have no testimony from [appellant] which would attempt to explain" appellant's actions or the evidence.

Although we recognize the importance of an opening statement, we also acknowledge that there may be situations in which an opening statement has little value. Whether to testify was appellant's decision. However, trial defense counsel was not ineffective when he failed to make an opening statement because his trial strategy depended upon appellant's testimony. The defense planned to offer no other evidence, and appellant's decision not to testify came unexpectedly just before the beginning of the defense case.

■ Appellant further alleges that trial defense counsel failed to make various motions and objections. For example, appellant alleges that trial defense counsel failed to object to 43 prosecution exhibits which were inadmissible. Unfortunately, appellant fails to tell this Court specifically why each of these exhibits was inadmissible and why trial defense counsel should have objected to them. Appellant also argues that trial defense counsel should have filed a motion for a Bill of Particulars to find out when and from where the allegedly stolen property was taken and who was responsible for that property. Generally, a Bill of Particulars requests detailed information regarding the charges against appellant. RCM 906(b)(5), Manual for Courts–Martial, United States (1995 ed.). In this case, the Article 32, UCMJ, 10 USC § 832, investigating officer's report provided additional factual details about the charges against appellant and was presumably turned over or made available to the defense under RCM 701(a). *Cf. United States v. Williams*, 40 MJ 379 (CMA 1994). Appellant has not demonstrated what information or advantage would have been derived from a Bill of Particulars that was not already provided by the Article 32 investigating officer's report.

■ According to appellant, trial defense counsel also should have moved to dismiss the charges against appellant for the theft of the sleeping bags and the gas masks because the Government failed to show that these items were military property. However, at trial there was testimony that the gas masks were new, of the "latest generation," and would not have been "turned in to salvage" or to the DRMO. In one of appellant's tape-recorded conversations with Cross, appellant stated that he had "brand new" sleeping bags. Witnesses also testified that DRMO never sold new military-issue sleeping bags or gas masks, and that the gas masks were the type used by the Air Force. Finally, there was testimony that appellant had not been issued either the sleeping bags or the gas masks in controversy. In light of this evidence, there is no reason to believe that the military judge would have granted a motion to dismiss. Thus, there is no reason to hold that trial defense counsel was ineffective for failing to make such a motion.

Trial defense counsel also allegedly failed to present crucial evidence (1) that appellant had sufficient funds in his other checking account to cover the bad checks which he wrote on his closed account; (2) that the military was not missing gas masks which were among the items that appellant was accused of stealing; (3) that appellant had a back injury and would have been unable to lift and, thus, steal the 100–pound base-station radios; and (4) that appellant had a receipt showing that a 2–pound base radio was sold by appellant to the informant, Mr. Cross, rather than the stolen 100–pound radios.

■ Appellant was charged with stealing, among other things, two government-owned gas masks and four government-owned sleeping bags sometime between 1990 and 1994. Appellant submits an unsworn letter from Richard Chadwick who states that an inventory for the 91st and 97th Air Refueling Squadrons showed no items, including gas masks and sleeping bags, were missing. Mr. Chadwick's letter fails to note the date of the inventory. Appellant argues that trial defense counsel was ineffective because he failed to present this inventory.

Trial defense counsel denies any knowledge of the so-called inventory. Appellate government counsel persuasively argued that there was no evidence the property came from those squadrons; there were other squadrons on base which had similar equipment; and any inventory would have to cover all the times between 1990 and 1994. We agree. Appellant has not made a showing that there was a comprehensive inventory available to trial defense counsel. Further, the Government established that the sleeping bags and gas masks were new military property and not something which appellant could have bought used. The charges against appellant do not allege that the gas masks and sleeping bags came from a particular squadron or even a particular base. Thus, trial defense counsel's failure to offer an inventory showing that no gas masks and sleeping bags were missing was not conduct "below an objective standard of reasonableness."

■ Appellant wrote checks from a checking account that he had closed. He had a second checking account solely in his name. At trial, defense counsel did not present bank records which would have shown that appellant had sufficient funds in his second checking account to cover the bad checks. Appellant argues that such evidence would have supported the defense's theory of mistake. Appellant also notes that a member asked a witness, who was a bank employee, whether appellant had enough money in the second account to cover the bad checks.

Trial defense counsel's affidavit does not address this issue. We agree with appellate government counsel that evidence appellant had the ability to pay the bad checks could have harmed appellant because, despite various notices, appellant did not actually pay the bad checks for almost 2 months. Thus, we conclude that trial defense counsel was not ineffective for failing to present evidence that appellant had money in a second checking account to pay his debts.

■ Trial defense counsel did not submit evidence of appellant's bad back because the prosecution had a taperecorded conversa-

tion in which appellant discussed the weight of the base-station radios and called the informant a "wimp" for not being able to lift them. Trial defense counsel also had no need to submit receipts showing that appellant purchased a 2–pound base-station radio because the prosecution brought out on direct and defense counsel on cross-examination information that the radios may have been purchased from DRMO, and the members were unlikely to believe that the 2–pound radios were the ones appellant sold to Cross in light of their taped conversation regarding the weight of the radios.

Thus, we hold that appellant has not overcome the presumption of competence envisioned in *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065.

### Issue II—Command Influence

■ On December 20, 1993, appellant was given Article 15 nonjudicial punishment for orally communicating indecent language to other non-commissioned officers, including Technical Sergeant (TSgt) Gerald R. Gilles. It is this Article 15 for the offense on December 7, 1993, that resulted in a battle of affidavits.

In an affidavit prepared 14 months after appellant's trial, TSgt Gilles said that, on December 7, 1993, a number of excess orders came into their office. In attempting to organize these, appellant became

> frustrated and yelled out in anger. I heard his response and witnessed his behavior and did not think anything of it because it was just a normal reaction of anger and frustration. It was not unusual or atypical for our office and I really did not think much about it. ... However, I was ordered by Major Werner to write a statement concerning this incident and was forced to writeup TSgt Lorenzen for an Article 15 for this outburst.
>
> On 12 December 1993, TSgt Lorenzen asked me and Sgt Hunt to write a statement in support of his defense of this Article 15. However, I was ordered by Maj Werner not to do so and not to make any statements about this case unless directed to do so by either the commander or Lt Oliver. Accordingly, I obeyed these orders and was unable to help TSgt Lorenzen.
>
> I believe that it was unfair for me to be ordered to make a statement against him and to bring an Article 15 against my professional judgment, and then to also be ordered not to tell the truth in a statement in support of TSgt Lorenzen. TSgt Lorenzen simply did not get a fair shake from the command on concerning [sic] this Article 15 or his subsequent court-martial.
>
> Although I was never directly ordered not to make a statement or to assist TSgt Lorenzen at his court-martial, I felt under pressure not to do so because of what had happened shortly before in the Article 15. ... Captain [D], Mike's defense attorney, never interviewed me or anyone else in the office to my knowledge. I would have been a character witness or written a statement on his behalf if I did not feel the pressure from the unit not to do so, or if I had been interviewed and asked by his defense counsel.

In response, Major Dale R. Werner, in an affidavit dated January 29, 1996, stated:

> During [December 1993], the squadron commander was pursuing Article 15 action on AB [Airman Basic] Lorenzen for using vulgar language and being insubordinate to a superior. TSgt Gilles reported to me that Airman Lorenzen entered his office, slammed the door and demanded that he and other coworkers, in his duty section, write statements to support his views and claims, involving this case. I told Gilles that no one was required to write statements at this time, if they chose not too [sic]. However, I informed him, the Area Defense Council [sic] may require statements however the request would come through the commander and myself.

Appellant argues that undue command influence affected both the Article 15, which was admitted at trial, and the trial itself.

We have long held that "[u]nlawful command influence undermines the integrity of the military justice system as well as of the commanders who are responsible for discipline within their units." *United States v. Weasler,* 43 MJ 15, 16 (1995). To raise the

issue of unlawful command influence, "an appellant must (1) 'allege[ ] sufficient facts which, if true, constitute unlawful command influence'; (2) show that the proceedings were unfair; and (3) show that the unlawful command influence was the proximate cause of that unfairness." *United States v. Stombaugh*, 40 MJ 208, 213 (CMA 1994), quoting *United States v. Levite*, 25 MJ 334, 341 (CMA 1987)(Cox, J., concurring).

The Court of Criminal Appeals reasoned that, when the alleged unlawful command influence occurred with respect to the Article 15, "appellant was free, at that juncture, to decline the Article 15 and to demand trial by court-martial, at which his complaint could have been fully explored and factual disputes resolved. He elected not to do so." Unpub. op. at 5. We disagree with the court below if it means that an Article 15 may not be contested as to guilt or innocence. Appellant did not waive his unlawful-command-influence claim by electing Article 15 nonjudicial punishment rather than demanding trial.

However, assuming *arguendo* that there was unlawful command influence at appellant's Article 15, appellant has not shown that his trial was unfair. The Article 15 was for vulgar language and insubordination. Appellant was on trial for larceny and writing bad checks. The Article 15 was admitted, along with two other reprimands and counselings, during sentencing. "[W]e ... are satisfied beyond a reasonable doubt that any unlawful command influence ... of the ... witnesses [in the Article 15 proceeding] did not [carry over to] affect the findings or sentence" in this court-martial. *Stombaugh*, 40 MJ at 214.

### Issue III—Admission of Affidavit

■ On appeal, the Court of Criminal Appeals admitted an affidavit from appellant's trial defense counsel addressing appellant's claim of ineffective assistance of counsel. Appellant argues that, in the affidavit, trial defense counsel disclosed privileged information not reasonably related to the ineffectiveness claim. Specifically, appellant contends that it was unnecessary for trial defense counsel to reveal (1) the content of appellant's expected testimony and (2) that appellant was suspected of other thefts.

■ When a convicted person claims that defense counsel was ineffective, "the attorney-client privilege is waived, ... but only as to matters reasonably related to that claim." *United States v. Dupas*, 14 MJ 28, 30 (CMA 1982) (citations and footnote omitted). "The attorney is not free to volunteer information that does not concern the issue of ineffective assistance of counsel." *Id.* (footnote omitted).

In explaining in his affidavit why he did not object to inadmissible hearsay at trial, trial defense counsel revealed that OSI agents suspected appellant of other thefts. The inadmissible hearsay was testimony that appellant was on base years before when certain property was stolen. Trial defense counsel knew that if he objected to the hearsay, the Government would call the OSI agents who had had appellant under surveillance to testify that they had first-hand knowledge that appellant was on base during those thefts. It was reasonably necessary for trial defense counsel to provide this explanation in his affidavit in order to explain why he did not object and to counter the ineffectiveness claim.

In arguing the issue of ineffective assistance of counsel, appellant took a "shotgun" approach. That is, appellant pointed to a multitude of alleged errors throughout the trial to support his claim of ineffectiveness. In doing so, appellant challenged trial defense counsel's overall trial strategy. In order to counter this charge of ineffectiveness, it was entirely appropriate for trial defense counsel to reveal the testimony that he expected appellant to provide. This expected testimony explained why trial defense counsel chose certain trial tactics. For example, it explained why trial defense counsel made no opening statement, and it shed light on the reason defense counsel cross-examined some witnesses but not others. Because trial defense counsel's strategy revolved around appellant's expected testimony and appellant in effect attacked that strategy, we hold that the affidavit was reasonably related to the ineffectiveness claim.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, GIERKE, and EFFRON concur.