UNITED STATES, Appellee,

v.

Sergeant Bethro L. TYLER, 217–68–0899,
United States Army, Appellant.

ACMR 9002005.

U.S. Army Court of Military Review.

18 Dec. 1992.

For Appellant: Eleanor Barnes (on brief). Captain Robert L. Carey, JAGC.

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC, Captain Sheila E. McDonald, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT
## ON REMAND

WERNER, Judge:

Contrary to his pleas, the appellant was convicted, in May 1990, by a general court-martial composed of members of raping and sodomizing his three and one-half year old daughter during a three month period in 1989, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 (1982) [hereinafter UCMJ]. He also pleaded guilty to breaking restriction in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court-martial sentenced him to a dishonorable discharge, confinement for thirty years, forfeiture of all pay

and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged.

In early 1991, the appellant filed an appeal with this court through his military appellate defense counsel in which he assigned no errors. Neither the record of post-trial proceedings nor the allied papers reflected that the appellant desired to raise any issues pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). In a short-form opinion dated 25 April 1991, this court held that the findings of guilty were legally and factually sufficient beyond a reasonable doubt and that the sentence, as approved by the convening authority, was appropriate and should be affirmed.

After securing a civilian defense counsel, the appellant petitioned the United States Court of Military Appeals which granted review on the issue of whether the military appellate defense counsel ineffectively represented the appellant by failing to file a brief before the Army Court of Military Review. Appellant specifically contended that his military appellate counsel failed to follow his instructions by not alleging that the evidence was insufficient to establish guilt and that the trial defense counsel was ineffective. In response, the government argued that the appellant voluntarily decided not to allege those errors and so informed his appellate military defense counsel. The Court of Military Appeals determined that the appellant had been denied the right to personally raise the sufficiency issue before this court as required by *United States v. Grostefon;* and that there was insufficient evidence to determine the ineffectiveness of counsel issue. The court remanded the case to us to conduct a factual inquiry into the appellant's assertion of ineffectiveness of trial defense counsel and such other issues as appellate counsel deemed appropriate. *United States v. Tyler,* 34 M.J. 293 (C.M.A.1992).

As he did before the Court of Military Appeals, the appellant has asserted the two issues noted above in principal and reply briefs. He has filed, and we have admitted, several affidavits (two of his own, his mother's and his wife's) in support of his allegation that trial defense counsel was ineffective. In response, the government, has filed an answering brief and an affidavit from the trial defense counsel. On the basis of the evidence of record, including the affidavits filed in the course of this appeal, we hold that there was sufficient evidence to establish that the appellant was guilty of the offenses of which he was convicted beyond a reasonable doubt; and that his trial defense counsel was not ineffective in representing him.

## I. Sufficiency of the Evidence

The appellant contends that the court-martial's findings of guilty of rape and sodomy are factually unsupportable. He invites us to overturn the court's determination by exercising our fact-finding powers pursuant to Article 66, UCMJ, 10 U.S.C. § 866.[1] We decline the invitation as we are satisfied that the findings of guilty are factually correct beyond a reasonable doubt.

Under the provisions of Article 66, we can "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact differently from the court-martial." However, our power to overturn a lower court's findings of fact is constrained by the statute's admonition to "recognize that the trial court saw and heard the witnesses." The Court of Military Appeals has held:

> For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves con-

---

1. The appellant has not alleged that the findings are legally insufficient. Nevertheless, we have reviewed the proceedings for legal sufficiency as required by our statutory mandate under the Code. The standard for legal sufficiency is whether *"after viewing the evidence in the light most favorable to the prosecution, any rational*

*trier of fact could have found the essential elements of the crime beyond a reasonable doubt."* *United States v. Hart,* 25 M.J. 143, 146 (C.M.A. 1987), quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We are satisfied that the foregoing standard was met in this case.

vinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

The government's evidence demonstrated that the victim, L.T., was brought to the Fort Drum, New York, medical clinic for a routine physical examination. The examining physician, Dr. Mathis, noticed a greenish discharge from the child's vaginal area and that the skin around the exterior of the vagina was irritated and peeling "like paint flaking off a wall." He also noticed "previous trauma" to the posterior portion of the vaginal opening. He believed that sexual abuse was evident and swabbed the area for chemical and biological testing. Laboratory analysis of the discharge fluid indicated the presence of the venereal disease chlamydia. The case was referred to military criminal investigative and civilian social welfare authorities.

■ Ms. Chamberlain, a social worker specializing in child abuse, testified that she interviewed L.T. at a local hospital where she presented her with four anatomically endowed dolls appearing as a man, a woman, a boy, and a girl. L.T. began playing with the dolls in a manner suggesting that she was familiar with sexual behavior and sexual terminology. She stripped the dolls of their clothing and placed the man-doll upon the girl-doll in a manner depicting intercourse, anal intercourse, and oral sodomy. At one point, she placed the penis of the man-doll in her own mouth. She stated that the appellant had done similar things to her. About two hours later, Ms. Chamberlain reinterviewed L.T. in the presence of two military criminal investigators who videotaped the second interview. Although the videotape was not introduced into evidence, the investigators testified that L.T. reiterated how she had been raped and sodomized by her father.

Dr. Lazoritz, a board-certified pediatrician who had specialized in child abuse for over eleven years and who had taught seminars concerning the subject, testified that he conducted an examination of L.T. four months after she had seen Dr. Mathis. He found that her hymen was damaged, that her vaginal opening was larger than normal, and that there was scarring and flaking of the area around the vaginal opening. He was aware that the child had tested positive for chlamydia. He concluded that she had been sexually abused.

L.T. testified in a childlike manner but said some very unchildlike things. In response to questions from the prosecutor, she said that her father had taken his clothes off when he washed her and that he washed her groin area because he had "put yucky stuff" there "with his dick." This happened on two occasions when L.T.'s mother was at work. On cross-examination, L.T. said she told her mother about what her father had done to her.

The defense's sole witnesses were the appellant and his wife. The appellant denied the allegations against him and further testified that he had tested negative for chlamydia. Mrs. Tyler testified that her daughter never reported that she had been molested by anyone and never used sexually descriptive words. She suggested that L.T.'s hymen might have been damaged when Dr. Mathis was swabbing her vaginal area with a Q-tip. She told of taking L.T. to another physician for a second examination after she had been examined by Dr. Mathis. At that time, L.T. did not claim she was molested by her father.

There was evidence that L.T., the appellant and his wife were treated for gonorrhea when she was two years old when the appellant had been stationed at another military installation.

Despite some contradictory evidence presented by the defense to rebut the government witnesses' testimony and the medical evidence of sexual abuse, we are satisfied that the court's guilty findings are supported by the evidence. Accordingly, we reject the appellant's contentions that the evidence was insufficient.

II. Ineffective Assistance of Counsel

■ The standards for determining whether an accused has been denied the effective assistance of counsel is set forth in the foundational cases of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984) and in *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Counsel are presumed to be competent and appellants bear the burden of overcoming that presumption. In assessing claims of ineffective assistance of counsel, we apply a two-pronged test. The first is competency, *i.e.*, was counsel's assistance objectively reasonable under the circumstances? The second is prejudice, *i.e.*, if counsel's assistance was not reasonable, was the accused prejudiced by counsel's misfeasance or omissions? *United States v. Stinson*, 34 M.J. 303 (C.M.A.1992). Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. Merely because an appellant presents evidence that his trial defense counsel was ineffective does not establish that fact. If the record demonstrates that there was a strategic or tactical reason for the counsel's action or inaction, courts will not second-guess counsel's decision. *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977).

■ The instant case was remanded to us to determine the merits of the appellant's claim that his counsel was ineffective. Of the numerous grounds asserted by the appellant in support of his contention, only the following warrant discussion. First, the trial defense counsel attempted to pressure him into pleading guilty in exchange for reduced confinement when he was not guilty. In this connection, the appellant believed that when he refused to plead guilty, his counsel abandoned him. Second, his trial defense counsel failed to bring favorable defense witnesses such as L.T.'s day care teacher, friends and neighbors, his former wife and her daughter, who would attest to the appellant's good character, amicable relationship with L.T., and the unlikelihood of his abusing her. Third, the trial defense counsel failed to call certain civilian doctors and present other medical evidence that would show that he did not have chlamydia and that it was unlikely L.T. was molested. Fourth, the trial defense counsel failed to call a pharmacist who would establish that L.T.'s vaginal medicine was the "yucky stuff" he put on her. Fifth, his trial defense counsel failed to cross-examine two military criminal investigators and failed to properly cross-examine Dr. Lazoritz.

In opposition, the trial defense counsel, Captain (CPT) C has filed a detailed, ten page affidavit in which he explained that he recommended that the appellant plead guilty because of the strength of the prosecution's case and the potentially severe sentence he faced were he found guilty. He denied having pressured the appellant into pleading guilty. On more than one occasion, he presented the evidence to the appellant as he saw it, notified him of the harsh potential maximum punishment, and of the fact that courts-martial at Fort Drum were likely to impose a severe sentence. He asked the appellant's mother and sister to persuade him to follow his advice. His efforts to convince the appellant to plead guilty were to no avail.

CPT C's trial strategy can best be described as "damage control." His principal concern was to prevent the introduction into evidence of the videotaped interview of L.T. in which she implicated the appellant. He feared that by attacking the credibility of L.T. and the criminal investigators, he would enable the government to introduce the tape in rebuttal. He also wished to prevent the prosecution from introducing, in rebuttal, uncharged misconduct evidence tending to identify that it was the appellant who infected L.T. with gonorrhea two years earlier. Contrary to the appellant's affidavit, CPT C stated that the civilian doctors and their medical reports actually implicated the appellant in the sexual abuse of L.T.. Furthermore, after participating in the Article 32 investigation, he was convinced that there was no exculpatory evidence in the civilian medical treatment records. He stated that his failure to call the allegedly favorable witnesses for the appellant would not be helpful. He was afraid that their testimony would have been considered an attack on L.T.'s credibility and might open the door to damaging rebuttal evidence.

We find the trial defense counsel's affidavit is credible and, in light of the other

evidence, supports the conclusion that his representation of the appellant was objectively reasonable, not ineffective and consequently, not prejudicial. The difficulties faced by the defense in this case were enormous. There was overwhelming evidence against the appellant. One of the civilian medical reports introduced during the Article 32 investigation when read in its entirety, supports Dr. Lazoritz' findings of injury to L.T.'s vaginal area. Although there was a statement in the report that L.T. may not have contracted chlamydia from the appellant, this would have had minimal impact on the court's findings. The report also mentions the possibility of L.T. having chlamydia and her past history of gonorrhea. This tended to support the defense counsel's belief that appellant's negative test for chlamydia was not an important facet of the proceedings in light of the medical evidence of disease and physical damage to L.T.'s vaginal area.

The trial defense counsel acted properly in considering the tender age and vulnerability of the victim and its potential to generate sympathy from a court with members. The fact that the abuse occurred on several occasions and the fact that there was evidence the appellant may have infected the child previously with a venereal disease potentially left the appellant open to a harsh sentence in the event he was convicted. Under the circumstances, we are reluctant to second-guess CPT C for failing to call witnesses who could not directly attest to the appellant's innocence but could only give their opinion of the likelihood of his innocence. Clearly, there was ample reason to justify advising the appellant to plead guilty for a limitation on sentence. Failing that, the defense counsel's actions in defending the appellant were reasonable considering that he did not have much to work with.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.