UNITED STATES, Appellee,

v.

Sergeant Clarence G. LEWIS, 056–58–5758, United States Army, Appellant.

ACMR 9202103.

U.S. Army Court of Military Review.

23 Sept. 1993.

For Appellant: Major James M. Heaton, JAGC, Captain Alison L. Becker, JAGC (on brief); Captain Michael A. Egan, JAGC.

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Kenneth T. Grant, JAGC, Captain Sheila E. McDonald, JAGC (on brief)

Intervenors: Vincent Yustas, Major Dennis Olgin, JAGC, on behalf of themselves.

Before WERNER, CREAN, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

Despite his pleas of not guilty, the appellant was convicted by a general court-martial composed of a military judge sitting alone, of conspiracy to wrongfully distribute cocaine and two specifications of

wrongfully distributing cocaine in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a (1988) [hereinafter UCMJ]. The military judge sentenced him to a bad-conduct discharge, confinement for four years and six months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged.

In his appellate brief, the appellant has asserted two principal errors.[1] First, he contends that the military judge erroneously failed to invoke the provisions of the Jencks Act, 18 U.S.C. § 3500, by not striking the testimony of a key prosecution witness after the government did not produce tape recordings of the witness' testimony at the Article 32, UCMJ, investigation. Second, he contends that the military judge violated the provisions of Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.] by admitting evidence of uncharged misconduct indicating that the appellant was involved in other drug transactions. The appellant has also contended, pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), that his trial defense counsel were ineffective. We disagree with all contentions.

## I. Facts

The charges arose out of an undercover drug suppression operation conducted by the Drug Suppression Team (DST) of the Fort Knox, Kentucky, Criminal Investigation Command. In the course of the operation, the DST learned that Ms. Jennetta Scott, a civilian employee at Fort Knox, was selling illicit drugs to servicemembers. Special Agent (SA) Mark Clay was assigned the task of contacting Ms. Scott, winning her trust, and purchasing drugs from her with a view towards apprehending her and anyone else involved in the illegal activity. SA Clay did his job well.

On 12 June 1991, SA Clay telephoned Ms. Scott and arranged to buy crack cocaine from her at her apartment in Radcliff, Ken-

---

1. He has also alleged that the court-martial lacked jurisdiction because the military judge was designated in violation of the Appointments Clause of the Constitution, an issue decided adversely to him by the Court of Military Appeals. *United States v. Weiss,* 36 M.J. 224 (C.M.A.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993) (92–1482).

tucky. As instructed, he arrived at her apartment building to find Ms. Scott, her brother, and another individual, Mr. Elliot Ditto, outside the building. Ms. Scott told SA Clay that she would have the drugs in a few minutes after Ditto contacted the supplier on a cordless telephone he was carrying. A few minutes later, a black Toyota automobile with dark-tinted windows and distinctively-styled wheel rims and license plates, approached the group and proceeded to the rear of the apartment building. Ditto said, "That's him."

Ms. Scott invited SA Clay into the apartment where the transaction eventually took place. Ditto left the apartment and returned with a plastic bag containing what appeared to be crack cocaine. When SA Clay said he wanted three hundred dollars' worth, Ditto again left the apartment and a few minutes later returned with twenty-six plastic bags and three plastic vials of crack cocaine which he gave to SA Clay in exchange for the money. Subsequently, Ms. Scott offered to sell SA Clay powdered cocaine but he replied that he would be back later. She also identified the supplier as an active duty soldier named Lewis.

On 20 June 1991, SA Clay again contacted Ms. Scott, this time to purchase powdered cocaine. As he did on the 12th of June, SA Clay arrived at her apartment where he met Scott, her brother, and Ditto. The latter contacted the supplier by calling him on his pager. A few minutes later, a vehicle that appeared to be the same black Toyota automobile with the same distinctive features as the one seen earlier by SA Clay arrived at the apartment. This time, SA Clay was close enough to identify the license number on the vehicle. Clay testified that he could see the driver's silhouette through the tinted glass window and he appeared to be a black male. (The appellant is black). SA Clay gave three hundred dollars to Ditto who left the apartment and drove away with the supplier. A few minutes later, he returned with fifteen vials of powdered cocaine which he delivered to SA Clay. Ms. Scott again identified the supplier as an active duty soldier named Lewis. Motor vehicle bureau rec-

ords traced the license number to a Toyota automobile registered to the appellant.

SA Clay's testimony was corroborated by Ms. Scott and Mr. Ditto, both of whom identified the appellant as the supplier of the cocaine involved in the two transactions.

In addition, a Ms. Young testified that the appellant sold powdered cocaine to her on three occasions. Two of the sales occurred at her house and the third at a local gas station. Ms. Young stated that the drugs were packaged in small plastic vials and the appellant delivered them to her in "his little black car." Although the appellant's counsel objected that her testimony related uncharged misconduct, the military judge overruled the objection. The judge agreed that the evidence constituted uncharged misconduct; however, he ruled that it was admissible under Mil.R.Evid. 404(b) as it established the appellant's identity in that he used a similar modus operandi to distribute the drugs.

The appellant's civilian trial defense counsel moved, under the Jencks Act, to strike SA Clay's testimony. He argued that, because the tape recordings of SA Clay's Article 32, UCMJ, testimony were lost and the summarized record of proceedings was not verbatim, he could not conduct an adequate cross-examination of the witness. The trial counsel countered that tape recordings had been made of the testimony of witnesses at the Article 32, UCMJ, investigation and that they had been stored in a unit safe by a legal clerk. However, when the unit deactivated, the safe and its contents were inadvertently misplaced. The trial counsel stated that the legal clerk responsible for the tape recordings was available to testify to the circumstances surrounding their disappearance. The defense counsel stated, "I'm willing to stipulate that it was a good faith loss, I'll stipulate to that. It's the issue strictly of prejudice. We don't need to have [the legal clerk]. I know—I've known her for years and I know it was lost in the movement and I'll stipulate to that." The military judge denied the motion.

## II. Jencks Act

We hold that the military judge correctly denied the appellant's motion to strike SA Clay's testimony under the Jencks Act.

The Jencks Act has long been applied to trials by courts-martial. *United States v. Walbert*, 14 U.S.C.M.A. 34, 33 C.M.R. 246 (1963). It requires the Government, upon request of the defense after a government witness has testified, to produce any prior "statement" of the witness relating to the subject matter about which the witness has testified. The purpose of the Act is to provide the defense information with which to impeach the witness. *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

*United States v. Pena*, 22 M.J. 281, 282 (C.M.A.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987) (footnote omitted).

Where the government fails to produce such prior statement by a government witness, the court shall "strike from the record the testimony of the witness." 18 U.S.C. § 3500(d).

Rule for Courts–Martial 914 [hereinafter R.C.M.], Manual for Courts–Martial, United States, 1984, is based on the Jencks Act and has a similar purpose. In relevant part, it provides:

(a) *Motion for production.* After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:

(1) In the case of a witness called by the trial counsel, in the possession of the United States; or

(2) In the case of a witness called by the defense, in the possession of the accused or defense counsel.

. . . .

(e) *Remedy for failure to produce statement.* If the other party elects not to comply with an order to deliver a statement to the moving party, the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is the trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice.

R.C.M. 914(a)(1), (2) and (e).

■ The requirement to produce a pretrial statement of a witness under the Jencks Act and R.C.M. 914 applies to tape recordings of statements of government witnesses at Article 32, UCMJ, investigations. *United States v. Marsh*, 21 M.J. 445 (C.M.A.1986); R.C.M. 914(f)(2).

■ Not every situation in which a party fails to produce a pretrial statement of a testifying witness mandates striking the testimony of the witness. The Jencks Act and R.C.M. 914 exclusionary rules are designed to prevent a party from gaining an unfair advantage in the trial arena by withholding evidence that could impeach that party's witness. They also enhance the accuracy of trial proceedings by facilitating cross-examination of witnesses. Though exclusionary rules, they are subject to good faith and harmless error exceptions. A failure to comply with the production requirement may be excused if the government no longer possesses the statement because it was lost or destroyed under circumstances in which the government was blameless. *United States v. Jarrie*, 5 M.J. 193, 195 (C.M.A.1978), *citing Killian v. United States*, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). Thus, the Court of Military Appeals has held that, where there was no evidence to show that the government intentionally withheld tape recordings of a testifying witness' Article 32, UCMJ, testimony or destroyed them in a bad faith effort to frustrate the defense or through gross negligence in securing them, it would not strike the witness' trial testimony. *Marsh*, 21 M.J. at 451–52.

■ The appellant has not shown that the government acted in bad faith in causing the destruction or loss of the tapes in the instant case. To the contrary, he has

conceded that the government acted in good faith but nevertheless argues that SA Clay's testimony should have been stricken solely because he was prejudiced. Apart from his concession, the government-proffered evidence demonstrated that the tapes were secured in a unit safe which was inadvertently misplaced through no fault of the custodian. Moreover, we have examined the summarized transcript of SA Clay's testimony and do not find it as impeachable as the appellant contends. SA Clay's trial testimony was internally consistent and corroborated by other witnesses. We conclude that the appellant would have suffered no prejudice even if the military judge's ruling had been erroneous.

### III. Uncharged Misconduct

We also hold that the military judge did not err in overruling the defense objection to the evidence of uncharged misconduct. The fundamental question presented is whether the evidence of the appellant's uncharged acts of drug distribution was admitted for the improper purpose of showing him to be a bad person or for the legitimate purpose of establishing his identity through modus operandi.

■ Evidence of uncharged misconduct is admissible if it is independently relevant under Mil.R.Evid. 401 and 402 and if its probative value is not "substantially outweighed by the danger of unfair prejudice." Mil.R.Evid. 403. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989). "Normally, *modus operandi* evidence enjoys logical relevance only to prove identity. However, if the prior acts of appellant are significantly similar to the charged acts and thus evidence a *particular* 'design' or 'system,' and *are relevant to prove or disprove a fact in issue,* the uncharged conduct may be admitted to prove such a design or purpose." *Id.* at 110 (citations omitted).

■ The modus operandi employed by the appellant during his drug sales to Ms. Young was not so similar to that used during his drug sales to SA Clay that evidence of it overcame its prejudicial effect on the trier of fact. *See United States v.*

*Williams*, 37 M.J. 972 (A.C.M.R.1993). These transactions were face-to-face distributions from the appellant to Ms. Young at her house and at a local gas station. In contrast, the sales to SA Clay occurred with the help of intermediaries Scott and Ditto at Ms. Scott's apartment. However, another contested factual issue involved the identity of the driver of the black Toyota automobile. Ms. Young's testimony that the appellant delivered the drugs to her in his "little black car" was relevant to proving the appellant's identity since it corroborated the testimony of Clay, Scott, and Ditto that the appellant drove such a vehicle when he sold drugs to Clay. Therefore, Ms. Young's testimony was properly admitted.

### IV. Ineffective Assistance of Counsel

#### A.

Pursuant to *Grostefon*, the appellant, through his appellate defense counsel, has personally asserted, inter alia, that he was not adequately represented by his detailed military trial defense counsel (Major Dennis Olgin) and individually selected civilian trial defense counsel (Mr. Vincent Yustas) during the trial and its adjunct proceedings. In support of his assertion, the appellant filed several affidavits attesting to the manner in which his counsel allegedly provided inadequate representation. He argues that he was prejudiced thereby and that we should set aside his conviction under the holdings of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Appellate government counsel have answered, without elaboration, that the appellant's *Grostefon* assertions lack merit. The government also noted that, in accordance with *United States v. Burdine*, 29 M.J. 834 (A.C.M.R.1989), it had "invited" both trial defense counsel to submit affidavits in response to the appellant's assertions of ineffective assistance, but that each had declined to respond unless this court ordered them to do so.

On 10 June 1993, this court determined that the appellant's affidavits contained

sufficient information to establish a *prima facie* case of ineffectiveness as to nine specific allegations and that the appellant had waived the attorney-client privilege concerning those allegations. We ordered Major Olgin and Mr. Yustas to "file with this Court within thirty (30) days of the date of this Order an affidavit addressing each allegation of ineffectiveness raised by the appellant through his appellate defense counsel." *See* Appendix to this Opinion.

On 7 July 1993, Major Olgin and Mr. Yustas responded by filing what they have styled "MOTION TO STAY AND TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR STAY OF ORDER AND FOR APPOINTMENT OF COUNSEL." In their "Motion to Stay and to Quash" they pray that we "temporarily stay and permanently quash [this court's] Order of 10 June 1993." In their alternative motion, they request a stay of our order in the event their motion to quash is denied so that they may appeal to or request extraordinary relief from the Court of Military Appeals. In conjunction with their alternative motion, the movants have requested "appointment of counsel to assist them." As of the date of this opinion, Major Olgin and Mr. Yustas have not filed affidavits in compliance with this court's order of 10 June 1993.

### B.

 In responding to this court's order by motion instead of by affidavits, the movants have presented us, sub silentio, with two threshold procedural issues. The first is whether this court may entertain pleadings from a non-party since the movants clearly are not representing the appellant or the government but are instead

representing themselves. Article 70, UCMJ, 10 U.S.C. § 870, governs who may appear as appellate counsel before military appellate courts. Military appellate counsel, whether representing the government or the appellant, must be so designated by The Judge Advocate General and must be a commissioned officer qualified under Article 27(b)(1), UCMJ, 10 U.S.C. § 827(b)(1). UCMJ art. 70(a). Civilian counsel may also represent the accused on appeal "if provided by him." UCMJ art. 70(d); *United States v. Kelker,* 4 M.J. 323 (C.M.A.1978); *United States v. Patterson,* 22 U.S.C.M.A. 157, 46 C.M.R. 157 (1973). The movants do not meet the aforementioned statutory criteria. Major Olgin has not been designated an appellate counsel by The Judge Advocate General nor is either attorney appearing on behalf of the appellant. That they represented the appellant during the trial does not authorize their appearance as appellate counsel. To the contrary, when Congress enacted Article 70, UCMJ, it specifically intended that appellate defense counsel should be separate and distinct from their counterparts at courts-martial. *Id.* at 160–161.[2] Moreover, where, as here, the appellant has claimed that his trial defense counsel were ineffective, it creates an apparent conflict of interest that raises questions about the adequacy of any appellate representation they might render on behalf of the accused. *See United States v. Leaver,* 36 M.J. 133 (C.M.A.1992); *United States v. Swanholm,* 36 M.J. 743 (A.C.M.R.1992); *United States v. Stith,* 5 M.J. 879 (A.C.M.R.1978), *pet. denied,* 7 M.J. 270 (C.M.A.1979).

 Second, the movants have not complied with this court's rules of practice and procedure requiring that appellate counsel

---

**2.** The Court of Military Appeals noted several possible reasons for Congress' disparate treatment of trial and appellate defense counsel. First, an appellate defense counsel who represented the appellant at trial "might be less likely to assign as error on appeal the inadequate assistance of counsel at trial." Second, the travel requirements associated with trial defense counsel arguing appeals might entail additional costs and time and thus adversely impact on trial representation. Third, the specialized nature of appellate representation demands continual study. Because of time constraints upon trial defense counsel, the quality of appellate representation might decline were they to attempt to perform both functions simultaneously. 46 C.M.R. at 161–62. The experience of the past two-and-a-half decades since the promulgation of the Military Justice Act of 1968, a period during which military criminal law has become increasingly complex and sophisticated, has shown that these considerations are at least equally, if not more, valid today.

enter a notice of appearance. Generally, the filing of any pleading relative to a case which contains the signature of counsel constitutes notice of appearance. A.C.M.R. R. 13. However, the signing of a motion, as distinguished from a pleading, does not constitute notice of appearance. A.C.M.R. R. 13.1(a). Conceivably, the movants could have filed an amicus curiae brief after timely moving for leave to do so. A.C.M.R. R. 15.4(a). However, their pleading does not purport, either expressly or constructively, to be an amicus curiae brief. What it does resemble is a motion in the nature of a request to intervene for the purpose of seeking reconsideration and modification of our order of 10 June 1993. The movants have cited no authority to us that would permit us to entertain this unusual motion. Nevertheless, we hold that it is permissible for them to intervene on their own behalf in these proceedings and for us to treat their pleading as a motion for intervention.

Black's Law Dictionary defines intervention as:

> [t]he procedure by which a third person not originally a party to a suit, but claiming an interest in the subject matter, comes into the case, in order to protect his right or interpose his claim.... Intervention may exist either as a matter of right or at the discretion of the court.

Black's Law Dictionary 820 (6th ed. 1990).

Normally, intervention is permitted only in civil cases. As indicated below, the Court of Military Appeals has suggested that it is also permissible under circumstances such as those reflected in this case.

In *United States v. Dupas*, 14 M.J. 28 (C.M.A.1982), the appellant claimed on appeal that he had been denied effective assistance of counsel at trial. The trial defense counsel failed to honor a request to furnish the case file to the appellate defense counsel or to answer questions concerning the defense's trial tactics. Appellant's motion to the Court of Military Review to compel the trial defense counsel to comply with the requests was denied. The

Court of Military Appeals reversed. The court held that, except in two circumstances, trial defense counsel generally may not deny a former client access to the case file or information concerning counsel's performance in defending the case.[3] The court also observed that if a trial defense counsel does not wish to reveal certain matters to a former client because "the trial defense counsel believes in some way his own interests are jeopardized, he can appropriately ask that the matter be adjudicated by the court." *Id.* at 31 n. 7. Presumably, the court would then exercise its discretion in determining whether or not to order the trial defense counsel to provide the requested documents or information. The situation presented in this case is similar to that in *Dupas* and begs a similar approach. We think that *Dupas* permits us to treat the "Motion to Stay and to Quash" as a "Motion to Intervene to Request Reconsideration and Modification" of the order of 10 June 1993.

Accordingly, the motion to stay or quash, restyled as a motion to intervene, is granted and this court will reconsider its order of 10 June 1993. The motions in the alternative for a stay and for appointment of counsel are denied as moot.

C.

 Upon reconsideration of our order, we find that although the movants have not filed affidavits as ordered, their response by motion is an acceptable substitute in this case. Being under oath, affidavits add credence to the evidence submitted by counsel in rebuttal to the appellant's affidavits. *See Burdine*, 29 M.J. 834. When filing a pleading before a court, counsel are obliged to be candid and not knowingly misrepresent material facts or the law. Army Reg. 27–26, Rules of Professional Conduct for Lawyers, Rule 3.3 (1 May 1992) [hereinafter AR 27–26]. We therefore regard the motion filed in response to our order as the functional equivalent of an affidavit for this case.

---

**3.** Two exceptions to the general rule are: 1) where the cost of reproducing documents or providing access to them is subject to reimbursement by the client; and 2) where the information is obtained subject to a promise of confidentiality even with respect to the client.

Furthermore, after reviewing the information incorporated in the motion, it appears that the movants have partially complied with the substantive requirements of this court's order of 10 June 1993. The information presented in their motion, when taken together with other matters contained in the record of trial and allied papers, is adequate to enable us to resolve some of the issues raised by the appellant in his allegations against his counsel. As to those portions of our order with which the movants have not complied, the record and allied papers are sufficient to enable us to decide the matters to which they relate. Thus, we need not issue supplementary orders for affidavits or order a limited evidentiary hearing to obtain the necessary information. *See United States v. Wean,* 37 M.J. 286 (C.M.A.1993); *Dupas,* 14 M.J. at 32; *Burdine,* 29 M.J. 834.

### D.

In their supporting brief the movants have questioned the authority of this court to order them to file affidavits and have challenged the propriety of our action. Their specific objections are:

1. The Army Court of Military Review lacks jurisdiction to issue the order.

2. The order contravenes the Internal Operating Procedures of the Army Court of Military Review.[4]

3. The order violates the attorney-client privilege.

4. Compliance with the order is not required because the allegations of ineffectiveness do not factually or legally substantiate the presumption of attorney competence.

5. Compliance with the order is not required unless prefaced with warnings required by Article 31, UCMJ, 10 U.S.C. § 831.

[4] The movants are evidently referring to the Army Court of Military Review Internal Rules of Practice and Procedure.

[5] These are: appeal by the government from an adverse ruling by a military judge which "terminates the proceedings with respect to a charge

### 1. Jurisdiction

The movants argue that we have no authority under Article 66, UCMJ, 10 U.S.C. § 866, to order them to file affidavits on the issue of ineffective assistance of counsel. The key points of their argument are: We are an Article I, U.S. Constitution, court whose jurisdiction is limited to reviewing approved findings and sentences; we have no statutory authority to independently hear evidence or compel the taking of evidence other than by remand of the case to a convening authority; only a convening authority may, in the exercise of his discretion, refer the matter to a military judge for an evidentiary hearing. In this connection, they claim that, "even when this Court orders a [*United States v.]* Du-Bay [17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967)] hearing, the convening authority is authorized to decline to hold it at all in his sole discretion." The movants also argue that, as they are not counsel of record on this appeal, we have no authority to order them to file affidavits in compliance with our rules of practice pursuant to *Burdine,* 29 M.J. 834. We disagree.

■■■ It is rather late in the history of military criminal jurisprudence for the movants to suggest that, because this court's authority emanates from Article I rather than Article III of the Constitution, it is something less than a court. "In their areas of jurisdiction, all Federal courts, whether Article I or III, are to be accorded equal deference." *U.S. Navy–Marine Corps Court of Military Review v. Cheney,* 29 M.J. 98, 103 n. * (C.M.A.1989). In Articles 62, 66, and 73, UCMJ, 10 U.S.C. §§ 862, 873, Congress set out three avenues by which court-martial proceedings may come to us for appellate review.[5] Our jurisdiction is not limited to review through the appellate process pursuant to Articles 62, 66, and 73, UCMJ. This court may issue extraordinary writs pursuant to the

or specification or which excludes evidence that is substantial proof of a fact material in the proceeding;" appeal by the accused to include appeals initiated pursuant to Article 69, UCMJ; and petition for new trial by the accused.

All Writs Act, 28 U.S.C.A. § 1651(a). *Dettinger v. United States*, 7 M.J. 216 (C.M.A. 1979). The Court of Military Appeals has intimated that the power to issue extraordinary writs may even be broader than that reflected in the express language of the All Writs Act. *See Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983); *United States v. McPhail*, 1 M.J. 457 (C.M.A.1976); *Pascascio v. Fischer*, 34 M.J. 996 (A.C.M.R.1992). "A court that had no control over inferior tribunals or authorities would really not be a court; and the Court of Military Review IS [emphasis in original] a court. *See United States v. Woods*, 26 M.J. 372, 373 (C.M.A.1988). *Cf. United States Navy–Marine Corps Court of Military Review v. Carlucci*, 26 M.J. 328 (C.M.A.1988)." *United States v. Montesinos*, 28 M.J. 38, 44 (C.M.A.1989).

Contrary to the position espoused by the movants, our authority to order evidentiary hearings before a military judge is not dependent upon the discretion of a convening authority. *Dubay*, 37 C.M.R. 411; *see also United States v. Parker*, 36 M.J. 269 (C.M.A.1993); *United States v. Montesinos*, 28 M.J. at 42–43. The practice of employing the evidentiary hearing evolved out of necessity to clarify collateral or predicate matters arising during the course of an appeal; and to resolve competing claims involving the disputed questions rather than "resort to the unsatisfactory alternative of settling the issue on the basis of *ex parte* affidavits ..." *DuBay*, 37 C.M.R. at 413. With respect to claims of ineffective assistance of counsel, the Court of Military Appeals observed:

> Contrary to state and federal practice, these claims do not come to us through post-conviction attacks on the verdict and sentence, where hearings are held and evidence is heard, upon which judges make factual findings and conclusions of law for an appellate court to review and consider. *See* 28 USC § 2254. Claims come to us instead in the form of affidavits or even unsworn allegations. There is no mechanism set out in the Uniform Code of Military Justice for this Court or the Courts of Military Review to evaluate such post-conviction claims. There

are provisions permitting an accused to seek a new trial on the limited "grounds of newly discovered evidence or fraud on the court." Art. 73, UCMJ, 10 USC § 873.

*Parker*, 36 M.J. at 272 *quoting*, *United States v. Polk*, 32 M.J. 150, 152 (C.M.A. 1991).

■■■■ That we may employ evidentiary hearings to resolve factual conflicts, does not prohibit us from considering affidavits. *See United States v. Lonetree*, 35 M.J. 396, 414 (C.M.A.1992) ("[E]very defendant alleging bad advice is [not] entitled to a *DuBay* hearing or a rehearing."). Indeed, affidavits invariably play "a role in triggering this process" of determining whether an evidentiary hearing is warranted. *Parker*, 36 M.J. at 272; *United States v. Mays*, 33 M.J. 455, 457 (C.M.A.1991); *see also United States v. Hilow*, 29 M.J. 641 (A.C.M.R. 1989), *rev'd*, 32 M.J. 439 (C.M.A.1991). In *Burdine*, we validated the use of affidavits as a way of deciding ineffectiveness of counsel claims raised pursuant to *Grostefon*. The "rules of practice" which we promulgated for their employment were subsequently incorporated into this court's internal rules of practice and procedure. *Burdine*, 29 M.J. at 837; A.C.M.R. R. 15.-3(d).

■■■■ *Burdine* provided that whenever an appellant wishes to assert that his trial defense counsel was ineffective, appellate defense counsel should: 1) afford the appellant the opportunity to make his assertions with specificity and submit them to the court in affidavit form; 2) assist the appellant in preparing the affidavit; 3) advise the appellant that submission of the affidavit was not required but that it might add credence to his allegations; and 4) inform the appellant that the allegation relieves his trial defense counsel of the duty of confidentiality concerning the allegation. Upon receipt of the allegation, appellate government counsel must contact the trial defense counsel and "secure in affidavit form the latter's response to the appellant's allegations." *Burdine*, 29 M.J. at 837. Subsequently, our internal rules add-

ed that, if the trial defense counsel declined to respond, the government should advise the court of that fact. A.C.M.R. R. 15.3(d). In the event the affidavits and other information in the record were insufficient to enable the court to resolve the issue, further proceedings could be directed.

The practice rules set out in *Burdine* permit this court to adjudicate allegations of counsel ineffectiveness fully and expeditiously. On the one hand, the rules allow liberal filing of claims by the appellant in compliance with policies and mandates of the Court of Military Appeals. *United States v. McGillis*, 27 M.J. 462 (C.M.A. 1988); *Grostefon* 12 M.J. at 431. At the same time, the rules limit use of evidentiary hearings to those instances where the issue of counsel ineffectiveness cannot be resolved on the basis of the record and affidavits. Many claims of ineffectiveness reflect nothing more than the accused "placing the blame on his trial defense counsel for his conviction or for his entry of a guilty plea...." *United States v. Hancock*, 49 C.M.R. 830 (A.C.M.R.1975). Thus, *Burdine* invited appellants to file affidavits with sufficient specificity to establish a colorable claim of ineffectiveness. Even where an appellant's allegation is sufficiently clear and cogent to be facially meritorious, we often cannot determine the worthiness of the claim without examining the countervailing affidavit from the counsel whose competence has been attacked.

The *Burdine* court did not expressly require that the counsel against whom the allegation was made file an affidavit in response to the allegation. Apparently, the court did not consider the possibility that counsel who believed that they were wrongly accused of professional dereliction by a former client would not want to rebut the allegation. We suspect the court assumed that trial defense counsel would understand that their ethical responsibility as officers of the legal system obligated them to be forthright in providing relevant evidence concerning a matter pending before

an appellate court.[6] In making that assumption the court did not realize that, under certain circumstances, counsel might not wish to respond to the allegation. For example, a reasonable belief of self-incrimination might induce a defense counsel's failure to comply with an order .from a court.

■ In summary, we have authority to order trial defense counsel to file affidavits in response to post-trial allegations of ineffectiveness lodged against them in the course of an appeal. As the highest tribunal in the Army, we have a responsibility to ensure that the military criminal justice system functions in a manner that not only protects the rights of the accused but also operates efficiently. It is clear that we may compel trial judges and government officials to comply with our orders when warranted. It would be anomalous if we could not also compel trial defense counsel to comply with reasonable rules of practice when necessary to resolve a material issue in a case. The requirement that trial defense counsel file a rebuttal affidavit where a colorable claim of ineffective assistance of counsel has been made is such a reasonable rule of practice. We acknowledge that counsel may initially refuse to comply with an order from this court provided they have a sound reason for doing so and assert such reason to us as a basis for their refusal in an appropriate response to our order. *United States v. Ruiz*, 23 U.S.C.M.A. 181, 48 C.M.R. 797 (1974); *see Dupas*, 14 M.J. at 31 n. 7; *United States v. Ingham*, 36 M.J. 990 (A.C.M.R.1993). However, if their asserted basis for disobeying the order is not justifiable, they risk disciplinary action for their disobedience. *United States v. Smith*, 4 M.J. 210 (C.M.A. 1978). In this case, the reasons asserted by the movants are insufficient to justify their refusal to comply with our order.

### 2. Internal Operating Procedures

■ The movants' assertion that our order did not comply with this court's inter-

---

**6.** The Preamble to AR 27–26, para. 6(a) provides, "[a] lawyer is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the qual-

ity of justice." *See also* ABA Model Rules of Professional Conduct, Preamble: A Lawyers Responsibilities (1992).

nal rules is without merit. They argue first that A.C.M.R. R. 15.3(d) permits them to comply with the order by submitting a declination statement; and second, that a panel of this court cannot overrule a rule adopted by the court as a whole. Rule 15.3(d) provides:

When the appellant in a case being reviewed pursuant to Article 66, U.C.M.J., asserts ineffective assistance of counsel as an issue and the issue is not briefed by appellate counsel, counsel will (1) advise the appellant that counsel complained of will be afforded the opportunity to respond, (2) advise the appellant that the privilege of confidentiality is waived to the extent necessary to permit the counsel complained of to respond to the allegations, (3) afford the appellant an opportunity to supply a sworn statement identifying the specific acts or omissions on which the claim of ineffective assistance is based, and (4) advise the Court that the foregoing steps have been accomplished or why they cannot be accomplished. In any event, the appellee's answer will include a sworn statement from counsel complained of, or a statement that counsel has declined to respond.

The movants' interpretation of the last sentence of the rule is incorrect. The language was added to permit appellate government counsel to explain why they were unable to obtain an affidavit from the defense counsel in compliance with *Burdine*. It did not apply to the movants nor provide them with a basis for refusing to comply with the order. In any event, the court's rules may be suspended by any panel of the court on its own motion for good cause shown. A.C.M.R. R. 25.1.[7] Our order to the movants was clearly permissible under this provision.

### 3. Attorney–Client Privilege

The movants' assertion that they need not comply with this court's order because they would be revealing privileged information in violation of the attorney-client privilege is without merit.

■■■■ We first observe that the attorney-client privilege is not at issue. The attorney-client privilege is a rule of evidence that permits a client to prevent the admission into evidence of "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client," between the client and his lawyer or other persons within the scope of the privilege. *United States v. Henson*, 20 M.J. 620 (A.C.M.R. 1985); *see also United States v. Ankeny*, 30 M.J. 10 n. 6 (C.M.A.1990); Mil.R.Evid. 502. The fundamental purpose of the privilege is to encourage clients to openly discuss legally damaging matters with their attorneys without fear that later disclosure of those matters may result in adverse legal consequences. Generally, only the client may invoke the privilege. Mil. R.Evid. 502(a). An exception to the general rule provides that, where the client is unable to invoke the privilege, the attorney may do so on the client's behalf. Mil. R.Evid. 502(c). But that exception does not apply where a former client has alleged his attorney was incompetent. The attorney-client privilege does not bar disclosure of communications "relevant to an issue of breach of duty by the lawyer to the client or the client to the lawyer." *United States v. Mays*, 33 M.J. at 458; Mil.R.Evid. 502(d)(3). Therefore, a trial defense counsel's affidavit in response to an allegation of ineffectiveness by a former client would not be inadmissible because of the attorney-client privilege.

■■■ The movants are actually contending that compliance with our order would cause them to violate their ethical obligation to maintain the confidentiality of communications and other information obtained during their representation of the appellant. AR 27–26, Rule 1.6; ABA Model Rules of Professional Conduct Rule 1.6 (1992) [hereinafter ABA Model Rules].

---

7. For good cause shown, the Court acting as a whole or in panel may suspend the requirements of any of these internal rules in a particular case on petition of a party or on its own motion and may order proceedings in accordance with its direction.
A.C.M.R.R. 25.1.

The ethical duty of confidentiality is a rule of conduct similar in purpose to the protection provided by the attorney-client privilege but broader in scope in that it covers more kinds of information. It is also similar in duration as both the privilege and the ethical duty remain viable even after the attorney-client relationship has terminated. There are differences between the two. For example, the attorney-client privilege bars a court or other governmental tribunal from *compelling* the revelation of confidential communications between the attorney and client or the agents of either of them. In contrast, the ethical duty prohibits an attorney from *voluntarily* revealing or using any information obtained in the course of the representation regardless of the source of that information.

The foundational principle, promulgated in both the Army and ABA Model Rules, provides, "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and as stated in" the subparagraphs of the respective Rules. AR 27–26, Rule 1.6(a), and ABA Model Rules; *see also* ABA Model Code of Professional Responsibility Canon 4 (1986) [hereinafter ABA Model Code]. Those provisions state that "A lawyer may reveal such information to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." AR 27–26, Rule 1.6(c), ABA Model Rule 1.6(b)(2). Finally, AR 27–26, Rule 1.6(d), provides, "[A]n Army lawyer may reveal such information when required or authorized to do so by law." The foregoing language, though not expressed in ABA Model Rule 1.6, is contained in a comment thereto.[8]

The movants contend that the use of the permissive term "may" in subparagraphs 1.6(c) of the Army Regulation and 1.6(b)(2) of the ABA Model Rules, in contrast to the mandatory term "shall" in AR 27–26, Rule 1.6(b), gives them discretion to refuse to comply with our order.[9] They state, "We are aware of no authority which would require the attorney to reveal privileged information when he does not believe the attack [on his competence] is supported by the record unless the circumstances in [AR 27–26] Rule 1.6(b) are present." (Footnote omitted). Military decisional law of the past four decades represents a tidal wave of judicial reasoning that runs counter to their position. *See United States v. Mays*, 33 M.J. at 458 and cases cited therein; *see also Partington v. Gedan*, 880 F.2d 116 (9th Cir.1989). The drafters of the rule used permissive language to allow lawyers to breach the ethical duty of confidentiality when necessitated by very limited, well-

---

**8.** *Disclosures Otherwise Required or Authorized*

The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, paragraph (a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See Rules 2.2, 2.3, 3.3 and 4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these Rules, but a presumption should exist against such a supersession.
ABA Model Rule 1.6 cmt.

A substantially identical comment also appears as part of the interpretative guidance of AR 27–26, Rule 1.6.

**9.** AR 27–26, Rule 1.6(b) provides:

A lawyer shall reveal such information to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm, or significant impairment of national security or the readiness or capability of a military unit, vessel, aircraft, or weapon system.
*See also* ABA Model Rule 1.6(b)(1).

defined conditions. One of these is, "when required by law." The drafters did not intend that lawyers should employ the rule to disobey a valid court order. We are mindful of the drafters' comment that a presumption should exist against supersession of Model Rule 1.6. *See* note 8. As indicated previously in this opinion, there are ample reasons to justify issuance of and compliance with our order.

We also call the movants' attention to their duty of candor toward this tribunal under AR 27–26, Rule 3.3 and ABA Model Rule 3.3. Subparagraph (a)(2) provides that, "A lawyer shall not knowingly: fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." Under subparagraph (b), the foregoing duty "continue[s] to the conclusion of the proceeding, and appl[ies] even if compliance requires disclosure of information otherwise protected by Rule 1.6." Finally, Rule 3.3, subparagraph (d) provides, "[I]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which are necessary to enable the tribunal to make an informed decision, whether or not the facts are adverse."

Army Regulation 27–26, Rule 3.3 and ABA Model Rule 3.3 effect a balance between a lawyer's duty of candor to a tribunal and the lawyer's obligation to protect client confidences. The comment to the rules describe situations in which a lawyer must reveal confidential information to a tribunal even though that revelation breaches the duty of confidentiality. The examples expressed in the comment do not specifically cover a situation such as that presented in the instant case. However, we are convinced that the circumstances herein justify tilting the balance in favor of revelation of information to this court.

In the first place, by retaining appellate counsel, the appellant has severed the attorney-client relationship with his trial defense counsel. *See United States v. Palenius*, 2 M.J. 86, 93 (C.M.A.1977). Although the ethical duty to protect confidences applies equally to former clients, so

does the attorney's obligation to reveal confidential information "when required to do so by law." AR 27–26 and ABA Model Rule 1.6 cmt. Second, by alleging that his trial defense counsel were ineffective, the appellant has, de facto, become their adversary and thereby has implicitly consented to their revelation of confidences concerning that issue. Third, by failing to contradict an allegation of ineffectiveness which they believe is false, the movants would be abetting the perpetration of a fraud on this court by the appellant. Who better than the movants are capable of providing this court with accurate information to decide the truth or falsity of the appellant's allegations? Under the circumstances, the movant's ethical duty to protect client confidences must yield to their concurrent duty of candor to this tribunal.

### 4. The Presumption of Effectiveness Was Not Rebutted

 Essentially, the movants have complained that the appellant's affidavits and the additional matters of record are insufficient to trigger a response from them. We disagree. There was cogent and credible evidence contained in the appellant's affidavits to establish a prima facie case of ineffectiveness. Moreover, that the affidavits may not have established the requisite degree of prejudice, does not justify counsels' noncompliance with this court's order. The determination as to whether the appellant has overcome the presumption of counsel competence is, like the question of whether the appellant suffered prejudice, for the court to make. "Such a judgment is not an appropriate task for an advocate." *United States v. Holt*, 33 M.J. 400, 410 (C.M.A. 1991).

 We are bound by the Court of Military Appeals' policy determination in *McGillis*, 27 M.J. 462, requiring that colorable claims of ineffective assistance of counsel should be decided on more than just speculation. This obligates us to demand that defense counsel respond to allegations which may later prove groundless. That it is a burden upon counsel cannot be disputed; but it is one that is consistent with their ethical obligations as officers of

**518**

the criminal justice system and their "special responsibility for the quality of justice." *See* note 6. Lawyers must not only be ethical, but they must appear ethical not only to their clients but to the public as well. *See* ABA Model Code EC 9-2. This is especially important where the right to counsel is involved. Former Chief Judge Everett once observed, "Congress may have concluded that servicemembers, who risk their lives for their country, should be granted a right to counsel greater than that which would be minimally required by the Constitution." *United States v. Johnson*, 21 M.J. 211, 213 (C.M.A.1986). We expect that counsel will assist us in this endeavor without the necessity of a court order. However, let there be no question, when circumstances so demand, we will provide the necessary oversight to ensure that the appellant's right to counsel is protected.

### 5. Article 31, UCMJ, Warnings

██ The movants were clearly not entitled to Article 31, UCMJ, warnings. There is no evidence to cause us to suspect either counsel of committing an offense under the UCMJ. Nor is there evidence that Mr. Yustas is, in fact, subject to the UCMJ. Moreover, a court is not such a "person" subject to the UCMJ who would be required to give warnings under Article 31, UCMJ.

### E.

Turning to the merits of the appellant's complaint, this court has measured ineffectiveness of counsel allegations against the following criteria:

Counsel are presumed to be competent and appellants bear the burden of overcoming that presumption. In assessing claims of ineffective assistance of counsel, we apply a two-pronged test. The first is competency, *i.e.*, was counsel's

assistance objectively reasonable under the circumstances? The second is prejudice, *i.e.*, if counsel's assistance was not reasonable, was the accused prejudiced by counsel's misfeasance or omissions? *United States v. Stinson*, 34 M.J. 303 (C.M.A.1992). Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. Merely because an appellant presents evidence that his trial defense counsel was ineffective does not establish that fact. If the record demonstrates that there was a strategic or tactical reason for the counsel's action or inaction, courts will not second-guess counsel's decision. *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977).

*United States v. Tyler*, 36 M.J. 641, 644 (A.C.M.R.1992).[10]

"[W]hen an appellant alleges that his trial defense counsel was ineffective, we often cannot determine the merits of such an allegation unless it has been fully investigated below. *United States v. McGillis*, 27 M.J. 462 (C.M.A.1988)." *United States v. Tyler*, 34 M.J. 293, 295 (C.M.A.1992). An evidentiary hearing pursuant to *DuBay*, 17 C.M.R. at 411, is one of the ways in which an appellate court may accomplish such an inquiry. However, it is not the only way to determine the validity of the allegations. *United States v. Zuis*, 49 C.M.R. 150, 154 (A.C.M.R.1974), *citing Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *United States v. Hood*, 9 U.S.C.M.A. 558, 26 C.M.R. 338 (1958); *see United States v. Davis*, 3 M.J. 430 n. 1 (C.M.A.1977). The issue may also be decided from the evidence contained in post-trial

---

**10.** This court has also recognized that the "but for" test for determining whether an accused was prejudiced by ineffectiveness of his counsel may have been modified by the Supreme Court in *Lockhart v. Fretwell*, ── U.S. ──, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* ── U.S. at ──, 113 S.Ct. at 843. However, for the reasons we explained in *United States v. Dumas*,

affidavits from the appellant and the trial defense counsel. *Burdine*, 29 M.J. 834.

Where the evidence contained in the record of trial, allied papers, and post-trial affidavits is sufficient to enable an appellate court to rationally conclude that the appellant either has or has not established that his trial defense counsel was ineffective, it may be unnecessary to order an evidentiary hearing with its attendant delay, additional cost, and administrative burden on the military criminal justice system. *See Tyler*, 36 M.J. at 644–45. Each case must stand on its own merits. If the appellant presents evidence to overcome the presumption that his counsel was effective, and the government fails to rebut that evidence after being given the opportunity to do so, then this court may find that counsel's performance was ineffective. If the appellant suffered prejudice as a result of counsel's ineffectiveness, we may set aside, as warranted, the findings, sentence, or convening authority's action. *Holt*, 33 M.J. at 400.[11] Conversely, if the government establishes that counsel was not ineffective or that the appellant suffered no prejudice, we may reject the allegation of ineffectiveness and affirm. However, if we are not satisfied we can properly resolve contested matters on the strength of affidavits and the record, then we must remand the case for an evidentiary hearing. *United States v. Wean*, 37 M.J. at 288.

With these considerations in mind, we proceed to the appellant's allegations against his trial defense counsel.

(1) The appellant alleged that Major Olgin ignored his handwritten clemency letter and refused to send it to the convening authority prior to action on findings and sentence. Major Olgin refutes the allegation by stating that he visited the appellant "at least twice" to discuss post-trial matters, submitted a clemency petition on the appellant's behalf and that said petition included a letter requesting clemency from the appellant's wife. Major Olgin also suggests that he did not submit the handwritten letter because he did not feel it was appropriate. Major Olgin has expressed a tactical reason for not submitting the letter and we will not second-guess his decision. *United States v. Bono*, 26 M.J. 240, 242 (C.M.A.1988).

(2) Major Olgin did not answer the allegation that he failed to advise the appellant he could request deferment of confinement pursuant to Article 57(d), UCMJ, 10 U.S.C. § 857(d), and R.C.M. 1101(c). Instead, he argues that even if he did not so advise the appellant, the appellant suffered no prejudice because it was not a "serious deficiency such as to affect the reliability of the trial," and did not "change the quantity or quality of the sentence adjudged." Assuming that Major Olgin was ineffective, we nevertheless find that the appellant was not prejudiced albeit not for the reasons proffered by Major Olgin.

When seeking deferment of a sentence to confinement, the burden is on the appellant to demonstrate to the convening authority that his interests outweigh the community's interest in his immediate confinement. R.C.M. 1101(c)(3). The factors involved in the convening authority's decision include: the probability of the accused's flight; the probability of the accused's commission of other offenses; in-

---

36 M.J. 941, (A.C.M.R. 1993), we will not apply the test as modified.

11. In another context, this court has decided issues raised for the first time on appeal on the basis of affidavits or the absence thereof. In *United States v. Peacock*, 19 M.J. 909 (A.C.M.R. 1985), *pet. denied*, 20 M.J. 205 (C.M.A.1985), the appellant filed an affidavit with this court alleging that he had been confined before trial with sentenced prisoners in violation of Article 13, UCMJ, 10 U.S.C. § 813. We first observed that violations of Article 13 can "assume such serious proportions as to justify post-trial consider-

ation." *United States v. Johnson*, 19 U.S.C.M.A. 49, 50, 41 C.M.R. 49, 50 (1969). Then we determined that the appellant's unrebutted post-trial affidavit attesting to his mistreatment was "cogent, credible, and sufficient to shift the burden of disproving its content to the Government 'beyond the point of equipoise or "inconclusiveness".' *United States v. Cordova*, 42 C.M.R. 466, 468 (A.C.M.R.1970)." *Peacock*, 19 M.J. at 911. After being given the opportunity to file opposing affidavits, the government did not rebut the appellant's allegation. We concluded that it failed to meet its evidentiary burden and that the appellant had suffered pretrial punishment in violation of the UCMJ.

timidation of witnesses, or interference with the administration of justice; the nature of the offenses of which the accused was convicted; the sentence adjudged; the command's immediate need for the accused; the effect of deferment on good order and discipline; and the accused's character, mental condition, family situation and service record. *Id.* The convening authority's decision to deny deferment is reviewable by this court for abuse of discretion. *United States v. Brownd,* 6 M.J. 338 (C.M.A.1979). The appellant submitted a clemency petition to the convening authority pursuant to R.C.M. 1105 in which he requested commutation of his sentence to confinement to one year because of hardship to his family. The convening authority rejected his request, in part, because of the staff judge advocate's recommendation based on the fact that the appellant stood convicted of serious offenses. We think it unlikely that the convening authority would have deferred the appellant's sentence to confinement had he been requested to do so.

■ (3) The appellant alleged that Mr. Yustas did not aggressively attempt to safeguard tape recordings of testimony taken at the Article 32, UCMJ, investigation; improperly conceded at trial that the tapes were lost in good faith; and failed to challenge the chain of custody of the tapes. Mr. Yustas responds that he had no duty to safeguard the tapes, that there was clear evidence that the tapes were lost in good faith, and that the question of chain of custody of the tapes was moot. His response is sufficiently cogent and credible to rebut the allegation that his performance was deficient.

(4) Mr. Yustas has not answered the allegation that he failed to interview Ms. Scott and Mr. Ditto or request their presence at the Article 32, UCMJ, investigation and failed to adequately question them at trial. His response states, "If true, how does this allegation show deficiency in performance? What questions were not asked at trial that should have been?"

■ Failure to request witnesses on behalf of an accused at an Article 32,

UCMJ, investigation may subvert the accused's right under military law to establish his innocence of the charges before their referral to trial. *United States v. Ledbetter,* 2 M.J. 37, 43 (C.M.A.1976) *citing, United States v. Samuels,* 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959). It also provides the accused with an opportunity to preserve favorable evidence from witnesses who might later alter their testimony to the accused's detriment. *See United States v. Hubbard,* 28 M.J. 27 (C.M.A.1989), *cert. denied,* 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 101 (1989). Although Mr. Yustas implies that his performance may have been deficient, his failure to request the witnesses does not help the appellant establish his claim of ineffectiveness. The record demonstrates that the witnesses were co-conspirators whose testimony likely would have been adverse to him during the Article 32, UCMJ, investigation. Furthermore, we are satisfied that their pretrial testimony would not have been any more impeachable than it was at trial even if they had been called to testify at the Article 32, UCMJ, investigation. Accordingly, no prejudice flowed from the trial defense counsel's omissions.

■ (5) and (7) The appellant alleged that Mr. Yustas, a retired judge advocate lieutenant colonel and former prosecutor for the Army, may have allowed his former service and his prior association with prosecutorial and administrative personnel to interfere with his duty to zealously represent him. He specifically suggests that it may have influenced Mr. Yustas to fail to aggressively challenge the loss of the tapes. Mr. Yustas has not unequivocally answered this very serious allegation that he had a conflict of interest. Instead, he states that his failure to challenge the loss of the tapes "may have been or it may not have been" the result of his friendship with the court reporter. Nor does he deny that he may have had a close relationship with opposing counsel but states that this "in and of itself, is not a serious professional error."

"Prejudice may be presumed when an ineffectiveness claim is based on an actual

conflict of interest." *United States v. Babbitt*, 26 M.J. 157, 159 (C.M.A.1988). However, the appellant must first establish that his counsel actively represented a conflicting interest and that he was prejudiced thereby. We have examined the record and find no evidence to indicate that Mr. Yustas' prior service as a prosecutor and former association with government personnel affected his performance as trial defense counsel. To the contrary, we are satisfied, that Mr. Yustas' representation met professional standards. He made appropriate motions, conducted thorough examinations of government and defense witnesses and presented adequate arguments.

■ (6) Both Major Olgin and Mr. Yustas answered the appellant's allegation that he was misled or coerced into entering into one or more stipulations of fact by stating "even if this allegation is true, the military judge cured this deficiency." Though they have not fully complied with our order concerning this matter, there is no evidence of prejudice to the appellant. The record establishes that the military judge fully inquired into the appellant's decisions to enter into the stipulations and determined that they were voluntarily and knowingly made. We are satisfied that his determination was correct.

■ (8) Major Olgin did not answer the appellant's allegation that, after their attorney-client relationship was terminated and, while the appellant was represented by appellate defense counsel, he contacted the appellant in an attempt to obtain evidence from him to rebut the appellant's allegations of ineffectiveness. Major Olgin states that he knows of "no rule of law which prevents a lawyer from contacting a former client even if he knows the client has alleged ineffective assistance." He also states that since the appellant did not

allege that he revealed any information, he was not prejudiced. Assuming the allegation were true, it does not relate to Major Olgin's representation during the trial proceedings. We are also satisfied that the alleged conduct had no effect on these appellate proceedings since the appellant has not altered or withdrawn his complaints against his counsel.

■ (9) The appellant's allegation that Mr. Yustas argued against his interest during sentencing is not substantiated. Counsel have correctly pointed out that, as the appellant has not specified how the sentencing argument was deficient, he failed to overcome the presumption his attorneys were competent.

■ We conclude that, on the basis of the evidence of record, the appellant's affidavits, and the trial defense counsel's responses thereto, the appellant's allegations of ineffective representation during the trial proceedings have no merit.[12]

We have considered the other matters submitted by the appellant pursuant to *Grostefon*, 12 M.J. 431, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge CREAN and Judge GRAVELLE concur.

### APPENDIX

### ORDER

WHEREAS, the appellant has submitted a series of lengthy and detailed affidavits asserting that his defense counsel, Major Dennis Olgin and Mr. Vincent Yustas, provided ineffective assistance of counsel before, during, and after his court-martial; and,

---

12. In resolving this assignment of error against the appellant, we do not decide whether his trial defense counsel were professionally derelict. We note, however, Mr. Yustas has not denied the appellant's allegation that his representation was affected by a possible conflict of interest. *See* ABA Model Rules, Rule 1.7. Nor has Major Olgin denied the appellant's allegation that he contacted him, after the appellant was repre-

sented by appellate defense counsel, allegedly to obtain evidence to rebut the alleged ineffectiveness. *See* AR 27–26, Rule 4.2. The responsibility to investigate and act upon allegations of professional improprieties against military and civilian trial defense counsel rests with The Judge Advocate General of the Army. R.C.M. 109; AR 27–26, Rule 8.

WHEREAS, we find that the assertions are sufficiently detailed to permit each counsel to reply to these assertions; and,

WHEREAS, we find that the appellant has waived the attorney-client privilege as to the following assertions:

(1) Major Olgin ignored appellant's post-trial clemency letter and refused to send it to the convening authority prior to the convening authority's action on the case.

(2) Major Olgin never explained to the appellant that the appellant could seek deferment of the sentence of confinement after trial. *See* R.C.M. 502(d)(6), Discussion, subsection E(i).

(3) Mr. Yustas did not aggressively seek to safeguard certain Article 32, UCMJ, audio tapes, conceded at trial they were lost in good faith, and didn't aggressively challenge the "chain of custody" of the tapes.

(4) Mr. Yustas' failure to challenge the loss of the Article 32 tapes may be the result of his friendship for the court-reporter.

(5) Mr. Yustas failed to interview or request Janette Scott and Elliott Ditto for the Article 32, UCMJ, hearing, and failed to adequately question them at trial.

(6) Mr. Yustas and MAJ Olgin misled and coerced the appellant into signing one or more stipulations of fact.

(7) Mr. Yustas, the former "chief prosecutor" at Fort Knox, may have had too close of a relationship with the government to be an aggressive advocate for the appellant.

(8) Major Olgin continued to represent the appellant post-trial after becoming aware of the appellant's allegations of ineffective assistance of counsel directed against him; such continued contacts may have been for the purpose of producing evidence against the appellant.

(9) Counsel argued against the appellant's interests during the sentencing proceedings.

WHEREAS, an appellant may raise claims of ineffectiveness of counsel through appellate defense counsel pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982); and

WHEREAS, this Court has previously established procedures for resolution of allegations of ineffectiveness of counsel pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). *See* Rule 15.3(d) United States Army Court of Military Review, Internal Rules of Practice and Procedure (1 May 1992); *United States v. Burdine*, 29 M.J. 834 (A.C.M.R.1989), and *United States v. Ingham*, 36 M.J. 990, 995-96 (A.C.M.R.1993).

ORDERED:

That appellate government counsel will cause this Order to be transmitted to Major Dennis Olgin and Mr. Vincent Yustas, and that said trial defense counsel will each file with this Court within thirty (30) days of the date of this Order an affidavit addressing each allegation of ineffectiveness raised by the appellant through his appellate defense counsel.

Date: 10 June 1993

CF: JALS–DA

JALS–GA

JALS–CRZ

JALS–CCZ

JALS–CCR

JALS–CR2

JALS–CR3

JALS–CR4

JALS–CR5